**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Daniel J. SCHMOHL, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 24, 2009.

Filed May 26, 2009.

Michael O. Palermo, Jr., Carlisle, for appellant.

Michelle H. Sibert, Asst. Dist. Atty., Carlisle, for Com., appellee.

BEFORE: ALLEN, CLELAND and FITZGERALD *, JJ.

* Former Justice specially assigned to the Superior Court

OPINION BY ALLEN, J.:

¶ 1 Appellant Daniel J. Schmohl appeals from the judgment of sentence entered following his convictions of aggravated assault while driving under the influence ("AA–DUI"), recklessly endangering another person ("REAP"), DUI—general impairment with accident, DUI—high rate of alcohol, and the summary offense of reckless driving.[1] Appellant maintains that the evidence was legally insufficient to sustain his convictions and that the trial court erred as a matter of law in failing to merge his conviction of DUI—high rate of alcohol—with his conviction of AA–DUI. We affirm in part and reverse in part, vacating Appellant's sentence for DUI—high rate of alcohol.

¶ 2 The trial court stated the facts of this case as follows.

The charges against Daniel J. Schmohl stem from a very serious motor vehicle accident that occurred at approximately 9:00 p.m. on March 30, 2006, on Sandbank Road, in Mt. Holly Springs, Cumberland County[.] The events leading up to the crime began sometime after 5:00 p.m. when the Defendant met his fiancée and two other acquaintances for dinner at the Three Pines Tavern. The Defendant indicated that he had dinner at the Tavern and drank at least 5–6 sixteen ounce beers. The Defendant admitted to the Central Processing Agent that he began drinking at approximately 5:30 p.m. that day and continued until 8:30–9:00 p.m. The Defendant stated that the couple he was socializing with all evening [was] visibly intoxicated when they left the Tavern.... The Defendant left the Tavern, and drove his

1. 75 Pa.C.S. § 3735.1, 18 Pa.C.S. § 2705, 75 Pa.C.S. §§ 3802(b), (a)(1), 3736(a), respectively.

vehicle to a point on Sandbank Road where he struck the victim.

Pennsylvania State Trooper Bryan Henneman was dispatched to the collision scene at 9:07 p.m. The force of the collision propelled the victim's body 101 feet from the point of impact to where it struck a telephone pole. The victim was flown by Life Lion helicopter to Hershey Medical Center.

Dr. Robert Cherry, Chief of Trauma and Critical Care at the Penn State Milton Hershey Medical Center, testified that the victim suffered life threatening injuries which included a large scalp laceration. The victim had lost so much blood that he was hermodynamically unstable and required 7 liters of crystalloid solution and 4 unites of blood to restore his blood pressure.... The victim's injuries were so extensive he required physical therapy 3 to 4 times a week for a period of 7 to 8 months.

Even though it was dark at the time of the incident, two drivers, Sonny Burford, the Defendant's fiancée, and Regina Hershey, observed the boys walking along the roadway and successfully drove round them without incident. These observations were made just prior to Defendant's collision with the victim. Even the Defendant admitted that if the victim was standing on the road, his headlights would have illuminated him and [the Defendant] should have been able to see him.

All of the witnesses generally agree that the victim was walking side by side with two of his friends. The two friends testified that the victim was very close to the white fog line on the road.

Even the Defendant's fiancée had stated to police that the one boy (i.e., the victim) was "walking slightly over the white line." The only truly neutral witness, Regina Hershey, stated that the victim "was right on the white line. He was walking down the berm of the road." As shown in Commonwealth's Exhibits 1 and 2, Sandbank Road in the area of the collision was relatively straight and unobstructed. An examination of the front of the Defendant's car shows an impact point which would establish that the right front wheel of the Defendant's car was very likely on or over the white fog line when he struck the victim[,] given the other witness testimony regarding the position of the victim just prior to the impact.

After striking the victim, the Defendant did not immediately stop but proceeded down Sandbank Road 440 feet before stopping. He did not call 911 on his cell phone but indicated that he panicked and called his fiancée.

After arriving at the scene, Trooper Henneman spoke with the Defendant and immediately detected a very strong odor of alcoholic beverage coming from his mouth and person. The Trooper also noticed that the Defendant's eyes were bloodshot and glassy.... The Trooper administered field sobriety tests to the Defendant and the Defendant failed both tests. The Defendant was placed under arrest for [DUI]. He was transported to the County Booking Center for processing ... [and] submit[ted] to a breathalyzer test[.] The result of the test was that the Defendant's blood alcohol content was .128% within two hours of the collision of the car he was driving with the victim.

Trial Court Opinion (T.C.O.), 4/15/08, at 3–5 (citations to the record omitted).

¶ 3 The Commonwealth charged Appellant with AA–DUI, REAP, DUI—general impairment with accident, DUI—high rate of alcohol, and reckless driving. At the conclusion of trial, on June 29, 2007, a jury convicted Appellant on all counts, and the

trial court found Appellant guilty of the summary offense of reckless driving. On September 4, 2007, the trial court sentenced Appellant 10 to 20 months imprisonment for the AA–DUI conviction; a consecutive term of 30 to 60 days for the REAP conviction; a consecutive term of 30 to 60 days on the DUI—high rate of alcohol-conviction; and a fine of $200.00 for the reckless driving conviction. The trial court concluded that Appellant's conviction of DUI—general impairment with accident—merged into the AA–DUI conviction for purposes of sentencing. The aggregate sentence imposed on Appellant's convictions was 12 to 24 months imprisonment.

¶ 4 Appellant now appeals to this Court raising the following issues for review:

A. Did the finder of fact err in finding that there was sufficient evidence to prove all requisite elements of Recklessly Endangering Another Person, Reckless Driving, and Aggravated Assault while DUI, beyond a reasonable doubt, where the victim was walking within the roadway at night, on a dark, unlit roadway, with his back to the flow of traffic and Defendant displayed no outward manifestations of reckless driving or a violation of the motor vehicle code[?]

B. Did the sentencing Court err in failing to merge Driving under the Influence—High Rate 75 Pa.C.S. § 3802(a) into Aggravated Assault by Motor Vehicle while DUI 75 Pa. C.S. § 3735.1, as the Section 3802(b) violation is a lesser included offense of Aggravated Assault by Motor Vehicle while DUI?

Brief for Appellant at 4.

¶ 5 In his first issue, Appellant contends that the evidence was insufficient to sustain his convictions of REAP, reckless driving and AA–DUI. Brief for Appellant at 21.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brumbaugh,* 932 A.2d 108, 109–110 (Pa.Super.2007) (citation omitted).

¶ 6 In particular, Appellant maintains that the evidence was legally inadequate to support a finding that he acted with the *mens rea* of "recklessness" necessary to sustain his convictions of REAP and reckless driving. Brief for Appellant at 13–18. Appellant further argues that the evidence was insufficient to support his conviction of AA–DUI because it failed to demonstrate

that he acted in a criminally negligent manner. *Id.* at 18–21. We disagree.

¶ 7 A person commits REAP when he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. To establish a conviction for reckless driving, the Commonwealth must prove that the defendant exhibited a "willful or wanton disregard for the safety of persons or property." 75 Pa.C.S. § 3736(a). A person acts recklessly if he or she "consciously disregards a substantial and unjustifiable risk" of injury to others. 18 Pa.C.S. § 302(b)(3). Further, "driving under the influence of an intoxicating substance does not establish recklessness *per se;* there must be other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury that is consciously disregarded." *Commonwealth v. Jeter,* 937 A.2d 466, 468 (Pa.Super.2007).

¶ 8 A person is guilty of AA–DUI when he "negligently causes serious bodily injury to another person as the result of [a DUI related offense.]" 75 Pa.C.S. § 3735.1(a). "The Crimes Code provides that the negligence required for commission of the offense of [AA–DUI] is present 'when [a person] should be aware of a substantial and unjustifiable risk ... [that is] of such a nature and degree that the actor's failure to perceive it ... involves a gross deviation from the standard of care that a reasonable person would observe in that actor's situation.'" *Commonwealth v. Miller,* 810 A.2d 178, 181 (Pa.Super.2002) (quoting 18 Pa.C.S. § 302(b)(4)).

¶ 9 Here, the record indicates that Appellant, after imbibing 5 to 6 sixteen-ounce cans of beer, over a period of approximately three hours, choose to drive his motor vehicle. N.T. at 86. The Commonwealth introduced a traffic crash reconstruction report into evidence. This report stated that the speed limit on Sandbank Road was 35 miles per hour and that Appellant was driving as fast as 50 miles per hour at the time he struck the victim. Cmwlth Ex. 11. The report, together with photographic evidence, demonstrated that Sandbank Road was a relatively straight and unobstructed road. *Id.* In addition, witness testimony and photographic evidence supported an inference that Appellant's right front wheel crossed the white fog line when he collided with the victim. N.T. at 32, 43, 51. Appellant testified that the angle in which his vehicle hit the victim caused the victim to propel onto the hood and then into the windshield. N.T. at 117. Appellant admitted that he should have seen the victim and his two companions walking on the berm of the road, but Appellant could not explain why he failed to do so prior to the accident. *Id.* Appellant conceded that at the time of the accident, his high beams were not turned on. *Id.* at 121. Within two hours of striking the victim, Appellant's blood alcohol content was .128%. *Id.* at 94.

¶ 10 Viewing this evidence in the light most favorable to the Commonwealth, we conclude that it was sufficient to establish that Appellant consciously disregarded a substantial and unjustifiable risk that his conduct may seriously injure another person. Appellant consumed an excessive amount of alcohol, sped while DUI, failed to utilize his high beams and carelessly drove across a fog line, directly striking the victim with forceful impact. *See Jeter,* 937 A.2d at 468 (finding sufficient evidence to sustain reckless driving conviction where the defendant was DUI, traveled on the Turnpike at a presumably increased speed, weaved in and out of the roadway and crashed into the center barrier); *Commonwealth v. Breighner,* 453 Pa.Super. 477, 684 A.2d 143, 145 (1996) (finding sufficient evidence to support REAP conviction

where witnesses observed defendant drinking prior to the accident, the defendant crossed the center line of the roadway and struck the victim's car, and tests after the accident revealed that defendant was DUI). We further conclude that the evidence sufficed to establish that Appellant's conduct in failing to appreciate the risk that he may injure another person was a gross deviation from the standard of care that a reasonable person would observe in Appellant's situation. *Cf. Commonwealth v. Sullivan*, 864 A.2d 1246, 1250 (Pa.Super.2004) (finding sufficient evidence of criminal negligence in AA–DUI case where defendant had a blood alcohol content of .130% and drove a quarter mile in the wrong direction of an off-ramp; defendant was not familiar with the road or the off-ramp). Therefore, Appellant's convictions of REAP, reckless driving and AA–DUI are supported by the record. Appellant's first issue consequently fails.

■ ¶ 11 In his second issue, Appellant claims that the trial court erred in failing to merge his conviction of DUI—high rate of alcohol—into his conviction of AA–DUI. Brief for Appellant at 21–24. However, at the time of filing his appellate brief, Appellant has served the incarceration portion of his judgment of sentence, which ostensibly includes at least part of the maximum sentence he received for his DUI—high rate of alcohol—conviction. *Id.* at 24 n. 10. Under Pennsylvania law, if Appellant completed the aggregate maximum term of imprisonment while his appeal was pending, he would not be subjected to any direct criminal consequences and his challenge to the legality of his sentence for the DUI—high rate of alcohol—conviction would be moot and incapable of review. *See Commonwealth v. King*, 786 A.2d 993, 996–97 (Pa.Super.2001) (finding merger issue waived and moot where the sentence of imprisonment on the allegedly merged

crime was completed during the course of the appeal). Given the fact that Appellant's judgment of sentence was rendered on September 4, 2007, and Appellant faced an aggregate term of 12 to 24 months imprisonment, it is quite possible that Appellant was released on parole and is currently subjected to certain conditions of parole, a violation of which could result in re-sentencing for the outstanding term of his maximum aggregate sentence. Based upon the reasonable assumption that Appellant is presently on parole, we will review his merger issue on its merits. *Cf. Commonwealth v. Ahlborn*, 548 Pa. 544, 699 A.2d 718, 720 (1997) (stating that in order to be eligible for relief under the PCRA, the defendant must currently be serving a sentence of imprisonment, probation or parole).

■ ¶ 12 "A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. Accordingly, our standard of review is plenary." *Commonwealth v. Duffy*, 832 A.2d 1132, 1137 (Pa.Super.2003) (citation omitted). The Pennsylvania legislature passed a statute governing merger, which states:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. *See Commonwealth v. Williams*, 920 A.2d 887 (Pa.Super.2007) (discussing how all of the statutory elements of the lesser offense must be included in the greater offense in order for the two to merge and adopting the dissent's approach to merger in *Commonwealth v. Jones*, 590 Pa. 356, 912 A.2d 815 (2006)).

¶ 13 The crimes of aggravated assault while DUI and DUI—high rate of alcohol are defined as follows:

**§ 3735.1. Aggravated assault by vehicle while driving under the influence**
(a) OFFENSE DEFINED.—Any person who negligently causes serious bodily injury to another person **as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802** commits a felony of the second degree when the violation is the cause of the injury.

75 Pa.C.S. § 3735.1(a) (emphasis supplied).

**§ 3802. Driving under influence of alcohol or controlled substance**

\* \* \* \*

(b) HIGH RATE OF ALCOHOL.—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(b).

¶ 14 Here, the trial court found that Appellant's conviction of DUI—general impairment with accident—merged with AA–DUI. The trial court, nonetheless, concluded that the DUI—high rate of alcohol—conviction did not merge with AA–DUI because the elements of DUI—high rate of alcohol—contained the additional element that the Commonwealth prove that the driver had a blood alcohol content in excess of .10%. T.C.O., 4/15/08, at 17. Thus, the trial court found that the elements of the lesser offense of DUI—high rate of alcohol—were not entirely sub-

sumed within the elements of the greater offense of AA–DUI. *Id.* Upon review, we cannot agree with the trial court's conclusion.

¶ 15 First, Pennsylvania case law establishes that the general impairment section of the DUI statute merges with the sections of the DUI statute that delineate classifications for different levels of impairment according to levels of blood alcohol content. *Commonwealth v. Williams,* 871 A.2d 254, 264–66 (Pa.Super.2005). As a result, there was no consistency in the trial court's conclusion that DUI—general impairment with accident—merged with AA–DUI while DUI—high rate of alcohol—did not. Second, we find the reasoning of the Commonwealth Court in *Zimmerman v. Pennsylvania DOT,* 759 A.2d 953 (Pa.Cmwlth.2000), persuasive:

[T]he definition of AA–DUI expressly incorporates the commission of the offense of DUI and conviction thereof as one of its elements. The offense of AA–DUI requires the commission and conviction of DUI plus the additional element that the offender negligently causes serious bodily injury to another person as a result of the DUI offense. Hence, all of the elements of DUI must be proven to establish the commission of AA–DUI, and DUI is incontrovertibly a lesser-included offense of AA–DUI. Accordingly, a person who is convicted of both AA–DUI and DUI arising from the same criminal transaction has in actuality committed only the greater criminal offense of AA–DUI.

*Id.* at 956–57 (citation and footnote omitted).

¶ 16 Adopting the analysis of the Commonwealth Court in *Zimmerman,* we conclude that the trial court imposed an illegal sentence for Appellant's conviction of DUI—high rate of alcohol—because this

offense merged with AA–DUI for purposes of sentencing. In light of the unique posture of this case concerning the current status of Appellant's sentence (*i.e.*, Appellant's completion of his term of imprisonment and whether he is on parole), we find it unnecessary to remand for re-sentencing since, at this point, our decision does not disturb the trial court's overall sentencing scheme. Rather, we will correct the judgment of sentence on direct appeal by vacating Appellant's sentence for DUI—high rate of alcohol. *Cf. Commonwealth v. Henderson,* 938 A.2d 1063, 1068 (Pa.Super.2007).

¶ 17 Judgment of sentence AFFIRMED in part and REVERSED in part. The sentence imposed for Appellant's conviction of DUI—high rate of alcohol–is VACATED. Jurisdiction RELINQUISHED.