**Commonwealth v. Greely**

*James Mancuso*, for Commonwealth.
*Matthew Kopecki*, for defendant.

BOCCABELLA, *J.*, January 16, 2014—

FINDINGS OF FACT

1. On June 2nd, 2013 at approximately 11:21 P.M. Officer Rocco DeCamillo observed a silver 2004 Saturn Ion, parked at the south east corner of a Wal-Mart parking lot. The driver was identified as Jamie Lee Urner (32). The front passenger did not have any identification and told Officer DeCamillo that he lived in Phoenix, Arizona.

2. The front passenger (defendant) identified himself as Bryan Parsons DOB: 11-27-1976 and Social Security Number 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. However, Officer DeCamillo later found out that the defendant's name was Brian Thomas Greely DOB: 11-27-1977 and the Social Security Number is 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 (same as above). Officer DeCamillo asked both occupants if there were any drugs or alcohol in the vehicle. They both replied no.

3. According to Officer DeCamillo, the defendant appeared to be intoxicated and was slurring his words. The defendant's eyes were bloodshot and glassy. He observed a bottle of tequila, which was half full in between the defendant's feet.

4. Officer DeCamillo returned to his vehicle to retrieve his PBT and to confirm the information both occupants gave to him. During this time, the defendant exited the vehicle. Officer DeCamillo thought he was going to urinate at the edge of the guard rail. Officer DeCamillo ordered him back into the vehicle. The defendant proceeded to step over the guard rail and run.

5. Officer DeCamillo yelled stop but the defendant continued to run. Officer DeCamillo alerted Berks County Communications that the defendant had fled the scene. Officer DeCamillo spoke to the driver (Jamie Lee Urner) and asked if she knew why the defendant fled. She responded "I don't know why he fled."

6. Officer DeCamillo noticed that the defendant took the bottle of tequila with him when he fled. The driver cooperated and divulged the defendant's phone number and said he lives with his grandmother in the trailer park to the rear of Wal-Mart. Officer DeCamillo administered

the PBT to the driver and she registered negative for the consumption of alcohol. The driver was released at approximately 11:30 P.M.

7. At 11:50 P.M, Office DeCamillo called the phone and number and spoke with Loretta Greely (grandmother). He immediately went to the residence and the grandmother said the defendant lives here but he is not home. The grandmother allowed Officer Decamillo to look in the defendant's room to make sure he was not home.

8. The grandmother also provided the defendant's birthday which was 11-27-1977. The Officer gave the grandmother his business card and advised her to contact him if Brian came home.

9. Officer DeCamillo later found out that the defendant had an open SCOFF Law Warrant for cruelty to animals. The defendant is charged with false identification to law enforcement authorities 18 Pa. C.S.A Sec. 4914(a) and public drunkenness 18 Pa. C.S.A. Sec. 5505

## CONCLUSIONS OF LAW

1. "Where a defendant files a motion to suppress, the burdens of production and persuasion are on the Commonwealth to prove the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. West*, 834 A.2d 625 at 629 (Pa. Super. 2003), citing *Commonwealth v. Wilmington*, 729 A.2d 1160 (Pa. Super. 1999); *See also* Pa.R.Crim.P. 581(H).

2. Section 6308(b) of the Vehicle Code provides:

Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has *reasonable suspicion* that a violation of this title is

occurring or has occurred, he may stop a vehicle upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b) (Emphasis added).

3. "Thus, when an officer has reasonable suspicion a violation of the vehicle code is occurring or has occurred, he may interrupt the privileged operation of a vehicle on the public highways and stop the vehicle for the investigative purposes stated therein." *Commonwealth v. Chase*, 960 A.2d 108, 112 (Pa. 2008) citing 75 Pa. C.S.A. § 6308(b).

4. "To establish grounds for 'reasonable suspicion' ... the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." *Commonwealth v. Little*, 903 A.2d 1269, 1272 (Pa. Super. 2006) citing *Commonwealth v. Bennet*, 827 A.2d 469, 477 (Pa. Super. 2003) (citing *Commonwealth v. Cook*, 558 Pa.50, 735 A.2d 673, 676 (1999)).

5. "In order to determine whether the police had a reasonable suspicion, the totality of the circumstances-the whole picture-must be considered." *In the Interest of D.M.*, 781 A.2d 1161, 1163 (Pa.2001) citing *United States v. Cortez*, 449 U.S. 411, 417 (1981).

6. In making this determination, we must give "due weight ... to the specific reasonable inferences [the police

officer] is entitled to draw from the facts in light of his experience." *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa.1999) quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

7. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa.1999) quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968).

8. "Reasonable suspicion sufficient to stop a motorist must be viewed from the standpoint of an objectively reasonable police officer." *Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008) citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

9. "While it is argued the lesser standard [reasonable suspicion] will allow a vehicle stop to be made based on pretextual motives, the United States Supreme Court made clear that case law 'foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved.'" *Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008) citing *Whren v. United States*, 517 U.S. 806, 813 (1996); *See also Commonwealth v. Foglia*, 979 A.2d 357, 361-62 (Pa. Super. 2009) (Stating that observations made after the officer intends to stop the defendant can be used to support their actions).

10. "[I]t is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v.*

*Santiago*, 980 A.2d 659, 664 (Pa. Super. 2009); *See also Commonwealth v. Costa-Hernandez*, 802 A.2d 671, 675 (Pa. Super. 2002); *See also Commonwealth v. Quiles*, 619 A.2d 291, 292 (Pa. Super. 1993) citing *Commonwealth v. Smith*, 577 A.2d 1387, 1388 (Pa. Super. 1990).

10. § 4914. False identification to law enforcement authorities

(a) Offense defined. — A person commits an offense if he furnishes law enforcement authorities with false information about his identity *after being informed* by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law.

In this current situation Officer DeCamillo saw two occupants in a vehicle parked in a Wal-Mart parking lot. Officer DeCamillo approached the vehicle and asked for identification from both occupants. Officer DeCamillo did inform neither the driver nor the defendant that he was officially investigating a violation of the law. The first thing he asked for was identification. According to the statute, an officer must first inform the individual(s) what he is investigating before asking for identification. The two occupants in the vehicle had no idea why the officer was asking for ID. A matter of fact, during the entire encounter, Officer DeCamillo "never" told anyone what he was investigating. Furthermore, the defendant relayed the correct Social Security number to identify himself. The defendant also relayed that his name was Bryan with DOB of 11/27/1976, but the officer later found out that his name was Brian with a DOB of 11/27/1977. A different spelling of a first name and one (1) year off from the

correct birth date, does not qualify as false identification. Especially when you have the correct Social Security number (more important for data research purposes). This court believes the Social Security number is sufficient to provide identification and the defendant did not violate this statute.

§ 5505. Public drunkenness and similar misconduct

A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance, as defined in the act of April 14, 1972 (P.L.233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic act, except those taken pursuant to the lawful order of a practitioner, as defined in The Controlled Substance, Drug, Device and Cosmetic act, *to the degree* that he may *endanger himself or other persons or property, or annoy persons in his vicinity*. A person convicted of violating this section may be sentenced to pay a fine of not more than $500 for the first violation and not more than $1,000 for the second and each subsequent violation.

According to Officer DeCamillo, the defendant appeared to be intoxicated and was slurring his words. The defendant eyes were bloodshot and glassy. He observed a bottle of tequila, which was half full in between the defendant's feet. However the defendant did not act to the degree that may endanger himself or other persons or property, or annoy persons in his vicinity. When Officer DeCamillo approached the vehicle, he did not report or testify to any type of violent acts by the defendant. While conversing with the defendant, he was not violent, argumentative, or a danger to the driver or the officer. The defendant was just simply sitting in the vehicle. No one called to

report property damage at Wal-Mart nor did anyone call to report an annoyance by an individual. Furthermore, Officer Decamillo was not absolutely sure the defendant was under the influence. He was not able to administer the SFT's or a PBT. Either way, the defendant still did not violate this statute to the degree transcribed above. Based on the totality of the circumstances, the court finds that the Commonwealth has not met its burden in establishing probable cause for these charges. Accordingly, any evidence derived from the stop is inadmissible as fruit of the poisonous tree.

12. The defendant's motion for suppression of the evidence is granted.

13. "In evaluating an accused's entitlement to pre-trial habeas corpus relief, a trial court must determine whether there is sufficient evidence to make out a *prima facie* case that the defendant committed the crime with which he or she is charged." *Commonwealth v. Hock*, 728 A.2d 943, 945 (Pa. 1999); *See generally Commonwealth v. Rachau*, 670 A.2d 731, 733 n.5 (Pa. Commw. 1996) citing *Commonwealth v. Kowalek*, 647 A.2d 948, 949 (Pa. Super. 1994).

14. "A *prima facie* case of defendant's guilt exists, so as to satisfy Commonwealth's burden at pre-trial stage of criminal prosecution, when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense." *Commonwealth v. Huggins*, 836 A.2d 862, 866 (Pa. 2003) citing *Commonwealth v. McBride*, 595 A.2d 589, 591 (Pa. 1991) (citing *Commonwealth v. Wojdak*, 466 A.2d 991 (Pa. 1983)).

15. "The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury." *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. 2001).

16. "In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Schmohl*, --- A.2d ----, 2009 WL 1451451, filed May 26, 2009.

17. "[I]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. 2001) quoting *Commonwealth v. Owen*, 580 A.2d 412, 414 (Pa. Super. 1990).

18. In this case, having already determined that the charges present is not justified, the court finds that the Commonwealth has presented insufficient evidence to establish a *prima facie* case with respect to all counts.

19. The defendant's petition for writ of habeas corpus is granted.

## ORDER

And now, this 16th day of January 2014, it is hereby ordered that the defendant's motion for suppression of the evidence is granted. It is further ordered that the defendant's petition for writ of habeas corpus is granted with respect to all counts.