J-A17024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN M. KENT, | |
| Appellant | No. 2367 EDA 2014 |

Appeal from the Judgment of Sentence Entered March 6, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002771-2013

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED JULY 27, 2015**

Appellant, John M. Kent, appeals from the aggregate judgment of sentence of 11½ to 23 months' incarceration following his conviction for aggravated assault by vehicle while driving under the influence (AA-DUI), and related offenses arising from a motorcycle accident in which Appellant's passenger was seriously injured. Appellant contends the trial court erred by failing to suppress the results of his blood-alcohol-content (BAC) test taken in the aftermath of the accident, as well as for failing to suppress his purportedly un-***Mirandized***[1] statement(s) made to police at that time. Appellant also contends that the evidence was insufficient to convict him of AA-DUI. After careful review, we affirm.

---

[1] *See **Miranda v. Arizona***, 384 U.S. 436 (1966).

The trial court summarized the facts adduced at trial as follows:

This case involved a motorcycle accident that occurred in Philadelphia on [10/4/12]. [Appellant] and a woman he had met that night were the only people involved in the accident. Maria Galante, the passenger on the motorcycle, testified that she first met [] Appellant at Casbar, a bar and restaurant, in Conshohocken, Pennsylvania. Ms. Galante explained that she went to the bar that evening for a drink and a bite to eat. After talking for approximately an hour, [] Appellant offered to take Ms. Galante somewhere else to get food, since the kitchen at Casbar was closed. [She] stated that she did not remember what [] Appellant was drinking at the bar, but that she was sure that he did have more than one drink while they were together talking.

Once outside the bar, [] Appellant offered to take Ms. Galante to Pat's Steaks on his motorcycle. The witness testified that she had been on a motorcycle a few times before, but the last time was over 20 years ago. [] Appellant told Ms. Galante that he did not have helmets for them to wear, but he assured her that she didn't need to worry because he was a good driver. Ms. Galante testified that approximately halfway along the ride, she asked [] Appellant if she was leaning properly through the turns. [] Appellant responded that what she was doing was perfect and not to change anything she was doing. The last thing the witness remembered from the incident was that the motorcycle no longer felt stable and she saw the grass below the motorcycle getting closer and closer.

Ms. Galante testified that she next remembered waking up and being questioned in the hospital. She explained that, due to the motorcycle accident, she stayed at Hahnemann Hospital for 10 days to receive treatment. Injuries sustained by Ms. Galante from the motorcycle crash included a fracture at the back of her head, a tear from her right labia [to her] left buttocks, bleeding out of her right ear, and damage to her pelvic wall. These injuries required multiple surgeries and numerous stitches. Ms. Galante testified that she missed work due to the incident, and both the Commonwealth and [] Appellant stipulated that she suffered serious bodily injury.

Officer Karen Lee, a Philadelphia Police Officer for over 24 years, stated that on the date of the incident, she received a

radio call regarding an automobile accident involving a motorcycle. When she arrived on the scene, she saw [] Appellant walking around freely and she was told that the passenger on the back of the motorcycle had been taken away by rescue personnel. Officer Lee testified that she spoke to [] Appellant, who seemed very nervous, and that he stated he had been the driver and that there was a female on the back of the motorcycle. [] Appellant told Officer Lee that, as he was coming around the bend of the road, he turned his head to talk to the female passenger and at that point the motorcycle veered off and slid on its side.

Officer Lee explained that she did not smell alcohol on the Appellant when she initially spoke to him at the scene of the crime but that [] Appellant's eyes were glazed over. The Officer believed that [] Appellant's eyes were glazed from something other than alcohol. [] Appellant was also speaking very fast when he spoke with Officer Lee. After interviewing [] Appellant, Officer Lee notified the dispatcher and held the scene until the investigating officers arrived. Officer Lee testified that she did not conduct field sobriety tests on [] Appellant because at no time did she smell alcohol on him. [] Appellant also never lost his balance and never slurred his speech while in Officer Lee's presence.

Officer William Lackman was the next officer to arrive at the scene of the accident. When he arrived, Officer Lackman saw [] Appellant sitting in Officer Lee's car with the window down. Officer Lackman testified that he approached [] Appellant to get details on the accident so that he could attempt to reconstruct the events that had occurred. [] Appellant told Officer Lackman that the passenger had shifted her weight, which caused the rear end of the motorcycle to slide out. Appellant explained that both [he] and the passenger fell to the ground, where he found the passenger was bleeding from her head.

[] Appellant told Officer Lackman that his fiancé, not the back passenger, owns the motorcycle and that neither rider was wearing a helmet at the time of the accident. Officer Lackman asked if [] Appellant had been drinking alcohol, because he could smell it on [him], but [] Appellant refused to answer. [] Appellant denied any drug use and volunteered to give a blood test sample to the officers. Officer Lackman asked Officer

- 3 -

Strohn, who was now on the scene, to take [] Appellant to the Philadelphia Detention Unit to conduct a DUI test.

At this point, Officer Lackman began a detailed crash investigation and attempted reconstruction of the accident. The officer measured the roadway, took photographs, observed scrapes on the concrete, examined the motorcycle, and took notes on damage to the surrounding area. During his investigation, Officer Lackman noticed two bottles of beer sticking out of the motorcycle side saddle bag, one bottle which was opened and the other bottle which was unopened. Officer Lackman testified that another officer seized the bottles of beer, the saddle bag, and the motorcycle for future investigation.

Officer Lackman testified that after concluding his accident reconstruction, he was able to determine that the back passenger's leg was between the frame of the motorcycle and the asphalt, so that when the accident occurred her leg was stuck momentarily while her body was thrown. At the time of the accident, Officer Lackman reported that there was no adverse weather or street conditions that could have contributed to the accident. Due to the marks on the road and the distance of the motorcycle from the initial impact, Officer Lackman estimated that the motorcycle was traveling close to 25 miles per hour. Officer Lackman also stated that there was no indication that [] Appellant had been speeding, had run a red light, or had violated any other traffic law. Officer Lackman stated that the crash could have resulted from the passenger leaning to one side of the motorcycle while the driver leaned to the other side. He stated that both the actions of [] Appellant and the back passenger contributed to the accident. Officer Lackman testified that throughout his interview, [] Appellant was never read his *Miranda* rights because at no time during the interview was [] Appellant under arrest.

Officer James Strohn testified that he transported [] Appellant to the Philadelphia D[eten]tion Unit for voluntary blood testing. On the way to the test, Officer Strohn explained that [] Appellant was staggering and had noticeably slurred speech. [] Appellant also had the odor of alcohol on his breath and had red watery eyes. Officer Strohn explained that [] Appellant's blood sample was taken at 5:14 am. After [] Appellant's blood samples were taken, [he] was taken back to the scene of the accident. Officer Lee testified that [] Appellant was not read his

*Miranda* warnings at any time when the blood sample was taken because he was not under arrest.

Dr. Richard Cohn, an expert in the area of pharmacology and toxicology, testified that he prepared a toxicology report regarding [] Appellant. Although Dr. Cohn explained that the toxicology report had an error on the front page, a date that was 19 days before the incident occurred; he was able to show that the samples belonged to [] Appellant and that the tested samples were taken on the day of the incident. Dr. Cohn explained that the blood had a 0.156 BAC and contained cocaine metabolite, benzoylec[g]onine. Head space gas chromatography was used to determine the alcohol level in the blood, and normal gas chromatography was used to determine the level of cocaine present.

Dr. Cohn was able to testify, to a reasonable degree of certainty, that [] Appellant was under the impairing effects of ethyl alcohol, which was aggravated by the intake of cocaine. According to Dr. Cohn, an individual with these things in their system would be unfit to perform safety sensitive tasks, including operating a motor vehicle in safe operation on a highway. Dr. Cohn explained the adverse negative effects of alcohol and cocaine on a person's behavior as well as the combination of the two. He explained that the combination would negatively impact an individual's ability to make a decision regarding safety sensitive decisions as well as for the welfare of others. The doctor stated that he believed that [] Appellant's use of cocaine had been on the same day of the accident, but before the intake of alcohol. Finally, Dr. Cohn was unable to state how many times the test samples had changed hands between the different [o]fficers, but he was sure that the test tubes were still sealed when he received them and that the samples were not contaminated.

Trial Court Opinion (TCO), 12/18/14, at 2-7 (unnumbered pages) (citations omitted).

On March 11, 2013, the Commonwealth filed a criminal information charging Appellant with AA-DUI, 75 Pa.C.S. § 3735.1; DUI-(general impairment, first offense), 75 Pa.C.S. § 3802(a)(1); simple assault, 18

Pa.C.S. § 2701; recklessly endanger another person (REAP), 18 Pa.C.S. § 2705; DUI-(high rate of alcohol, first offense), 75 Pa.C.S. § 3802(b); and DUI-(cocaine, first offense), 75 Pa.C.S. § 3802(d)(ii). Following a preliminary hearing, the simple assault and REAP charges were dismissed.

Prior to trial, Appellant filed an omnibus pre-trial motion, in which he requested that the trial court 1) suppress any statements he made to law enforcement following the accident; 2) suppress the results of the BAC test; and 3) quash the AA-DUI charge. Initially, a hearing was scheduled to address Appellant's omnibus pre-trial motion on July 15, 2013. However, because the Commonwealth was not prepared to litigate a suppression hearing on that date, the matter was postponed until September 27, 2013.[2] N.T., 7/15/13, at 3-6. For reasons not apparent from the record, the hearing was later rescheduled for October 25, 2013. On that date, the Commonwealth was again unprepared to proceed with a suppression hearing.[3] N.T., 10/25/13, at 5. However, the trial court proceeded to address, and then deny, Appellant's motion to quash. *Id.* at 24. The suppression hearing was again continued until the first day of trial: January 6, 2014.

---

[2] The reason given by the Commonwealth was that a necessary witness, Officer Lackman, was unavailable to testify.

[3] Once again, Officer Lackman was unavailable to testify.

On January 6, 2014, Appellant waived his right to a jury trial. The court then commenced the trial without addressing the unlitigated suppression issues. On January 8, 2014, Appellant was found guilty of AA-DUI, DUI-(high rate of alcohol, first offense), and DUI-(cocaine, first offense). On March 6, 2014, the trial court sentenced Appellant to 11½ to 23 months' incarceration for AA-DUI, and a concurrent term of 72 hours to 6 months' incarceration for DUI-(cocaine, first offense).[4] Appellant filed a timely, omnibus post-sentence motion on March 14, 2014, which was denied by operation of law on July 15, 2014. Appellant subsequently filed a timely notice of appeal on August 8, 2014, and a timely, court-ordered Pa.R.A.P. 1925(b) statement on September 8, 2014. The trial court issued its Rule 1925(a) opinion on December 18, 2014.

Appellant now presents the following questions for our review:

[1] Did the Lower Court err by failing to quash the charge of aggravated assault by DUI despite a lack of evidence to prove any driving related criminal negligence, or any causal link between the Appellant's driving and the serious bodily injury?

[2] Did the Lower Court err by failing to conduct a prompt suppression hearing as required by Pa.R.Crim.P. 577(B), 580, and 581[,] in violation of [] Appellant's due process rights and [his] right[] to a fair trial?

[3] Did the Lower Court err by failing to suppress the statements that were obtained without a warrant, without probable cause, and without properly informed consent and/or a knowing,

---

[4] No penalty was imposed for Appellant's conviction for DUI-(high rate of alcohol, first offense).

voluntary and intelligent waiver of [] Appellant's constitutional rights?

[4] Did the Lower Court err by failing to suppress the results of a [BAC] test that was taken more than 2 hours after [] Appellant was in actual physical control of his vehicle and the police did not provide any reasonable excuse for the delay?

[5] Did the Lower Court err by failing to suppress the [BAC] test that was obtained without a warrant and [as] a result of police coercion?

[6] Did the Lower Court commit error when it, *sua sponte*, suggested that the Appellant was in possession of two bottles of beer in an attached saddle bag despite no evidence to support such a conclusion, and then relied on this legal conclusion as a basis to find [] Appellant guilty of aggravated assault via DUI?

Appellant's Brief, at 9.

Appellant's first claim concerns the trial court's denying his pre-trial motion to quash the charge of AA-DUI. Specifically, Appellant contends that there was insufficient evidence to establish that he acted with the minimum *mens rea* necessary to sustain the offense—criminal negligence.

"A defendant may challenge the sufficiency of the evidence presented by the Commonwealth at the preliminary hearing by filing a motion for a Writ of Habeas Corpus in Common Pleas Court. In Philadelphia County, this motion is generally referred to as a Motion to Quash the Return of Transcript." **Commonwealth v. McBride**, 595 A.2d 589, 590 (Pa. 1991). "If in fact it is determined at trial that the evidence of the Commonwealth is sufficient to be submitted to the jury, then any deficiency in the presentation before the district justice would have been harmless." **Commonwealth v. Hess**, 414 A.2d 1043, 1048 (Pa. 1980). Thus, if the trial evidence is

sufficient to convict, a court's failure to grant a motion to quash on grounds of insufficient evidence is rendered harmless. Accordingly, for ease of disposition, we evaluate Appellant's claim as a challenge to the sufficiency of the evidence, for which our standard of review is well-established:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

"Any person who *negligently* causes serious bodily injury to another person as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802 commits a felony of the second degree when the violation is the cause of the injury." 75 Pa.C.S. § 3735.1(a) (emphasis added).

> A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him,

involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(4).

Appellant asserts that in order to sustain a conviction for AA-DUI, there must be some "indicia of unsafe driving beyond the DUI itself[.]" Appellant's Brief, at 17. Appellant argues that the record in this case reveals he "was not speeding, did not disobey any traffic signs or signals, was not driving in a dangerous manner, nor did he commit any motor vehicle citations [*sic*]." *Id.* at 18. Rather, he contends:

> The only evidence that the Commonwealth point[ed] to in the record at the time of the motion to quash [was] a statement from Ms. Galante that, at some point in time during the ride she asked [] Appellant[,] "Is there anything I should know?" and that [] Appellant said "No, you're doing everything just fine." The record is void of any evidence that prior to this question, or in fact prior to Ms. Galante's sudden lean to the left during a right turn that caused the accident, that she was doing anything to create a substantial risk of harm that a reasonable person would have warned her about.

*Id.* at 19.

The trial court's Rule 1925(a) opinion simply concludes that Appellant's conviction for AA-DUI renders this claim moot. TCO, at 10 (unnumbered pages). Indeed, the fact that the trial court found Appellant guilty of AA-DUI implies that it believed the evidence to be sufficient to demonstrate that Appellant's negligence was a cause of the victim's serious bodily injury. While the trial court's finding of mootness is not incorrect, we will address Appellant's claim as a challenge to the sufficiency of the evidence, out of an abundance of caution, because if the evidence was sufficient to convict him

at trial, any error with regard to the denial of his motion to quash is also harmless.[5]

When issuing the verdict in this case, the trial court stated that Appellant's intoxication due to alcohol and cocaine contributed to the following negligent conduct:

> Driving a motorcycle with an inexperienced passenger without a helmet, assuring her he was a good driver, never disclosing the recent use of cocaine or the number of drinks or never explicitly telling her what to do.  Putting an open bottle of beer in a side saddle, in addition to a closed bottle of beer in the motorcycle.
>
> I believe [Appellant]'s statement made to Officer Lee at the time the initial -- very first contact he had with police he did not indicate the complainant was the one that shifted her weight.  He said he was the one that had shifted his weight and turn[ed] his head to speak to her.

---

[5] In this regard, the trial itself presented Appellant with a second opportunity to litigate the sufficiency of the evidence.  Thus, Appellant's motion to quash was rendered moot by the trial court's guilty verdict pursuant to **Commonwealth v. Lee**, 662 A.2d 645, 650 (Pa. 1995) (holding that the appellant's "adjudication of guilt renders **moot** any allegation that the Commonwealth failed to establish a *prima facie* case" at the preliminary hearing) (emphasis added).  **Compare Commonwealth v. McCullough**, 461 A.2d 1229 (Pa. 1983) (holding that the Commonwealth's failure to present a *prima facie* case of robbery at the appellant's preliminary hearing was **immaterial** where the Commonwealth met its burden of proving the underlying offense at trial beyond a reasonable doubt); **and compare Hess**, **supra** ("If in fact it is determined at trial that the evidence of the Commonwealth is sufficient to be submitted to the jury, then any deficiency in the presentation before the district justice would have been **harmless**.") (emphasis added).  Whether Appellant's claim is 'moot' under **Lee**, 'immaterial' under **McCullough**, or 'harmless' under **Hess**, we conclude that he is not entitled to relief under any of these standards.

And it's those things, all of that while turning at 25 miles an hour, making a right hand turn, all of those are the contributing factors that [Appellant] is responsible for. There can be obviously more than one cause and [Appellant]'s actions, as I noted, are just one o[f] many in the series of events that led to this accident and I think he's guilty of [AA-DUI].

N.T., 1/8/14, at 5.

We agree that the confluence of these acts and omissions adequately demonstrate that Appellant's negligent conduct caused the injuries to the victim. Contrary to Appellant's assertions, these facts provide sufficient evidence of his unsafe driving beyond mere intoxication. Appellant created a foreseeable risk of injury by having an in- or under-experienced motorcycle passenger ride helmetless with him, while simultaneously failing to disclose his own degree of intoxication. Additionally, the trial court credited Appellant's first claim to police—that he had turned his head, causing the shift in weight that led to the accident—rather than his subsequent, self-serving claim that the victim had unbalanced the motorcycle by shifting her weight. Even if Appellant did not perceive these risks, his failure to do so "involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." 18 Pa.C.S. § 302(b)(4). This conclusion is buttressed by Officer Lackman's testimony, which established that no adverse weather or street conditions could have contributed to the accident.

Appellant argues that several authorities run counter to this conclusion, case law which purportedly demonstrates the proposition that negligence cannot be proven for purposes of an AA-DUI offense absent

evidence of another motor vehicle infraction. First, we note that, apart from proof of a violation of 75 Pa.C.S. § 3802, a fact which is not contested in this case, the definition of AA-DUI does not require that a motor vehicle violation or other illegal conduct be proven in order to demonstrate the requisite *mens rea* of negligence necessary to sustain a conviction for that offense, nor does Appellant offer any argument to this effect. Thus, Appellant ostensibly believes that case law establishes such a rule.

Appellant cites two cases which are simply inapposite to such an argument, including **Commonwealth v. Tanner**, 61 A.3d 1043 (Pa. Super. 2013), which is not a sufficiency case at all. In **Tanner**, the appellant raised sentencing issues pertaining to an AA-DUI conviction, but those issues were not resolved by this Court. Instead, acting *sua sponte*, the **Tanner** Court only addressed an illegal sentence. Appellant also cites **Commonwealth v. Johnson**, 545 A.2d 349 (Pa. Super. 1988), a case which did not even involve an AA-DUI offense.

Appellant fared better with his other citations. In **Commonwealth v. Schmohl**, 975 A.2d 1144 (Pa. Super. 2009), the appellant challenged the sufficiency of the evidence supporting his AA-DUI conviction, arguing that he "displayed no outward manifestations of reckless driving or a violation of the motor vehicle code[.]" **Id.** at 1147. This Court disagreed, noting that the appellant, after imbibing 5-6 sixteen-ounce cans of beer, drove as fast as 50 m.p.h. in a 35 m.p.h. zone when he struck the victim. Furthermore, evidence supported an inference that the appellant had crossed the fog line

just before striking the victim. This Court found that evidence sufficient to demonstrate the appellant's negligence.

In **Commonwealth v. Miller**, 810 A.2d 178 (Pa. Super. 2002), the Commonwealth appealed from the trial court's dismissing of Miller's AA-DUI charge for lack of sufficient evidence pursuant to a pre-trial *habeas corpus* petition. Miller had collided with a motorcyclist while making a left turn across the oncoming traffic lane in which the biker was travelling. The trial court had dismissed the charge, concluding that the Commonwealth could not prove negligence in the absence of witnesses to the accident. However, this Court reversed, as physical evidence showed that the biker had been travelling within the posted speed limit, as demonstrated by the skid marks left by the motorcycle. From this evidence, along with the undisputed facts that Miller made a left turn against opposing traffic and that the right side of his vehicle had struck the biker, this Court concluded that sufficient evidence showed that Miller had been grossly negligent in "traversing the victim's right of way." **Id.** at 181.

In **Commonwealth v. Ketterer**, 725 A.2d 801 (Pa. Super. 1999), this Court sustained a conviction for AA-DUI where the appellant was involved in an accident while speeding. The appellant's speeding was particularly negligent because "minimal visibility caused by severe weather conditions" led other drivers to travel at approximately 25 m.p.h. in a 45 m.p.h. zone, whereas the appellant had been driving at an estimated speed of 65 m.p.h. in the same zone. **Id.** at 804. However, **Ketterer** is not directly on point.

At issue in that case was the sufficiency of the evidence as it pertained to the causation element for AA-DUI, not the sufficiency of the evidence regarding the requisite *mens rea* for the offense.

Finally, Appellant cites **Commonwealth v. Nicotra**, 625 A.2d 1259 (Pa. Super. 1993), which, like **Ketterer**, addressed causation sufficiency rather than *mens rea* sufficiency. Nevertheless, in **Nicotra**, this Court found sufficient evidence of AA-DUI where the appellant had been "driving his vehicle at a high rate of speed and had ignored several stop signs." We also concluded that "[t]he factfinder could … infer from the evidence that [the] appellant's reflexes and judgment had been adversely affected by his intoxication." **Nicotra**, 625 A.2d at 1264.

Instantly, we agree with Appellant that most of the above-cited cases found evidence sufficient to sustain an AA-DUI conviction where the defendant's conduct involved motor vehicle code infractions above and beyond the underlying DUI offense. However, in none of those cases did this Court state or imply that negligence for purposes of AA-DUI could not be proven in the absence of an independent motor vehicle code violation. Given the absence of such a requirement in the text of 75 Pa.C.S. § 3735.1, considering our conclusion that Appellant's conduct satisfied Section 302(b)(4)'s definition of criminal negligence, and considering the lack of any case law supporting his position, we conclude that Appellant's sufficiency claim lacks merit.

Appellant's second, third, fourth, and fifth claims of error all pertain to his motion to suppress his un-***Mirandized*** statements to police and the results of his post-accident BAC test. The trial court found that Appellant waived all suppression-related claims by failing to adequately preserve them.

As noted above in the procedural history of this case, Appellant filed an omnibus suppression motion seeking the exclusion of both the BAC test results and his un-***Mirandized*** statements. ***See*** Appellant's Omnibus Pre-Trial Motion, filed 4/22/13 (refiled 9/3/13). The Commonwealth was not prepared to litigate Appellant's suppression motions on two occasions, leaving Appellant's omnibus suppression motion unresolved when his trial began on January 6, 2014. Thus, the trial court clearly erred when it proceeded to trial without first resolving Appellant's pending suppression issues. It is also apparent from the record, however, that the defense did not object to the court's oversight in this regard.

Appellant also failed to object when the Commonwealth sought admission of Appellant's BAC test results and his un-***Mirandized*** statements at trial. Officer Lackman testified extensively regarding Appellant's statements to him immediately after the accident. N.T., 1/6/14, at 20-24. At no time during this testimony did Appellant or his counsel lodge an objection. ***Id.*** Similarly, Appellant failed to object when the Commonwealth introduced Appellant's BAC test results through the testimony of Dr. Cohn. ***Id.*** at 92. Indeed, Appellant made no mention of the unaddressed

suppression issues until his closing argument. **Id.** at 111-112. Consequently, the trial court found that Appellant waived any suppression claim by failing to bring the unaddressed motion(s) to the court's attention prior to the admission of the BAC test results and un-**Mirandized** statements. TCO, at 8-9. We agree.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Furthermore, "[i]t is well established that trial judges must be given an opportunity to correct errors at the time they are made." **See Commonwealth v. Clair**, 326 A.2d 272, 274 (Pa. 1974). In this regard, "a party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." **Id.** (quoting **Commonwealth v. Marlin**, 305 A.2d 14, 16 (Pa. 1973) (citations omitted)). "Even where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver." **Commonwealth v. Strunk**, 953 A.2d 577, 579 (Pa. Super. 2008).

Instantly, defense counsel's failure to bring the unlitigated suppression issues to the court's attention prior to the admission of the purportedly suppressible evidence deprived the trial court of the ability to correct its own error in a timely fashion. Moreover, a reasonable inference could have been drawn from counsel's failure to object to the admission of the disputed evidence that the related suppression motions had been abandoned. Accordingly, we conclude that Appellant's second, third, fourth, and fifth

claims have not been adequately preserved for direct appellate review.[6]  As such, they are deemed waived.

Finally, Appellant contends that the trial court erred when it concluded that the beer found in Appellant's motorcycle's saddlebags belonged to him. Appellant believes that his purported ownership or possession of the beer bottles in question was in impermissible inference drawn from the evidence. We disagree.

The Commonwealth argues that the inference was proper since the beer in question "was found in [Appellant's] motorcycle, he had been drinking earlier in the night, [and] he was intoxicated at the time of the accident[.]"  Commonwealth's Brief, at 8 n.3.  We agree.  The court's inference was patently reasonable given the circumstances in which the beer was discovered.  Appellant's final claim is meritless.

Judgement of sentence **affirmed**.

_____

[6] Due to counsel's failure to bring this matter to the trial court's attention in a timely fashion, Appellant's only recourse, if he is entitled to relief at all, lies in an ineffective assistance of counsel claim which may only be raised during collateral review in a petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.*  **See Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013) (holding that, absent special circumstances outlined in **Holmes**, "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/2015