**COMMONWEALTH OF PENNSYLVANIA,**
Appellant,

v.

**Donald Earl MILLER Appellee.**

Superior Court of Pennsylvania.

Submitted Aug. 5, 2002.
Filed Oct. 29, 2002.

Nancy Duffield, Assistant District Attorney, Uniontown, for Commonwealth.

Samuel J. Davis, Uniontown, for appellee.

Before: DEL SOLE, P.J., and GRACI and MONTEMURO *, JJ.

OPINION BY MONTEMURO, J.

¶ 1 This Commonwealth appeal lies from an order of the Court of Common Pleas of Fayette County granting in part and denying in part Appellee's petition for habeas corpus relief.

¶ 2 Appellee was arrested on June 19, 2000, in connection with a collision between his automobile and a motorcycle driven by a state trooper on his way to work. The charges included violations of those sections of the vehicle code pertinent to: driving under the influence; turning movements and required signals; careless driving; duty to give information and render aid; accidents involving death or personal injury; and aggravated assault by vehicle while driving under the influence. After a magistrate's hearing on December 31, 2000, Appellee was held for court on all charges. The following January, he filed a petition for writ of habeas corpus, and a hearing was held on March 15, 2001. At the conclusion of the proceeding, he successfully moved for recusal of the trial judge.[1] In September, Appellee entered an open guilty plea in return for which the aggravated assault charge was to be nol prossed. The plea was subsequently withdrawn, apparently after his motion for intermediate punishment was denied.

¶ 3 On November 13, 2001, another habeas corpus proceeding was held, following the Commonwealth's unsuccessful motion for recusal of the substitute trial judge.[2] On January 7, 2002, the trial court dismissed two of the three charges relating to DUI, 75 Pa.C.S.A. §§ 3731(a)(2) and (3),[3] the charges relating to careless driving and improper turns, 75 Pa.C.S.A. §§ 3714 and 3334(a), and the charge of aggravated assault by vehicle, 75 Pa.C.S.A. § 3735.1. Only the charges of driving while under the influence of alcohol to a degree which renders the person incapable of safe driving, 75 Pa.C.S.A. § 3731(a)(1), duty to give information and render aid, 75 Pa.C.S.A. § 3744, and [leaving] accidents involving death or personal injury, 75 Pa.C.S.A. §. 3742, were sustained. This appeal followed,[4] presenting the sole issue that the trial court erred in finding that the Commonwealth had failed to make out a prima facie case of the dismissed offenses. We reverse.

¶ 4 To assess properly the trial court's conclusions, it is necessary to relate the facts known about the collision.[5] At 11:00 p.m. on June 19, 2000, Appellee was driving north on Route 51 in Fayette County when he made a left turn at an intersection. He heard a thump and looked back to see a man lying in the road. Appellee had made his turn against oncoming traffic, consisting in this case, of Trooper Jeffrey Jones on his motorcycle, who was struck by the right rear panel of

---

* Retired Justice assigned to Superior Court.

1. Appellee had been a member of the committee which selected the trial court judge for appointment to the bench.

2. The basis for the motion was the fact that the trial judge is a cousin of defense counsel.

3. The court's dismissal of these two charges, which relate to controlled substances, is not contested.

4. All proceedings in the trial court have been stayed by Order of March 22, 2002.

5. The trial court's Opinion erroneously states that the parties stipulated to a limitation of the materials that the court might consider: only the testimony of the Commonwealth's expert witness and the testimony presented at the magistrate's hearing. In fact, the stipulation concerned the admission of the notes of testimony from the magistrate's hearing.

Appellee's vehicle as he approached the intersection in the southbound lane. The victim landed in that lane as did the bike, which left approximately 50 feet of skid marks behind it. The headlight of the machine was still illuminated when a motorist and his passenger stopped at the scene. Appellee, standing in the northbound lane, had flagged them down, shouting frantically to call 911. As they ran toward the victim, Appellee drove off, but was seen to cruise back and forth past the accident scene twice, finally parking his car nearby. When, on information supplied by the motorists, police sought to interview him, he initially denied any involvement in or knowledge of the collision, but shortly thereafter volunteered that he was responsible, at the same time denying that he had seen the victim coming. It is to be noted that the weather at the time of the incident was clear, and no evidence was offered that the sight lines of this section of highway are obstructed. Because Appellee demonstrated all the symptoms of inebriation and was unable to pass field sobriety tests, he was transported to a nearby hospital, where, some 2½ hours after impact his blood alcohol level was revealed to be .119%.[6] The severity of the victim's injuries was stipulated; after being struck by Appellee's vehicle he remained comatose for 5½ months and sustained permanent brain damage.

This Court's scope of review in a pretrial habeas corpus case is to determine whether a prima facie case was established. In that vein, we may only reverse a decision to grant a petition for habeas corpus when the trial court has committed a manifest abuse of discretion.

A prima facie case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. In determining the presence or absence of a prima facie case, inferences reasonably drawn from the evidence of record that would support a verdict of guilty are to be given effect, but suspicion and conjecture are not evidence and are unacceptable as such.

Stated another way, a prima facie case in support of an accused's guilt consists of evidence that, if accepted as true, would warrant submission of the case to a jury. Therefore, proof of the accused's guilt need not be established at this stage.

*Commonwealth v. Packard,* 767 A.2d 1068, 1070–71 (Pa.Super.2001), *appeal denied,* 566 Pa. 660, 782 A.2d 544 (2001) (citations omitted).

¶ 5 The Commonwealth has contested the dismissal of the careless driving, turning/signaling, and aggravated assault charges which the trial court concluded had remained unproven after the habeas corpus hearing. Of these, the charge of aggravated assault by vehicle while driving under the influence is obviously the most serious. The defining statute provides:

Any person who negligently causes serious bodily injury to another person as the result of a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) and who is convicted of violating section 3731 commits a felony of the second degree when the violation is the cause of the injury.

75 Pa.C.S.A. § 3735.1.

¶ 6 As already noted, the prima facie case as to two of the elements of this

---

**6.** The prosecution expert, to whose opinion the trial court refers, testified that at the time of the collision, Appellee's blood alcohol level was .137%.

offense were undisputed: the severity of the victim's injuries, and Appellee's intoxication. The trial court dismissed the charge after concluding that the collision was merely a tragic accident; because there had been no evidence demonstrating that Appellee deviated from the standard of care established by an underlying traffic regulation, he was not "even slightly negligent." (Trial Ct. Op. at 17).

¶ 7 The Crimes Code provides that the negligence required for commission of the offense of aggravated assault by vehicle DUI is present "when [a person] should be aware of a substantial and unjustifiable risk ... [that is] of such a nature and degree that the actor's failure to perceive it ... involves a gross deviation from the standard of care that a reasonable person would observe in that actor's situation." 18 Pa.C.S.A. § 302(b)(4); *Commonwealth v. Ketterer*, 725 A.2d 801 (Pa.Super.1999). The trial court found that because there were no witnesses to the collision, and because physical evidence as to how it had occurred was lacking, no negligence could be proven on Appellee's part. Specifically, the court found the record silent as to where the skid marks were found.

■ ¶ 8 However, even such a limited record as the trial court relies on reveals otherwise. There was testimony from an investigating officer who personally saw and chalked the ends of the marks for later measurement. Based on the report prepared by the accident reconstructionist, the officer testified that the skid marks extended 54.8 feet from the rear wheel of the motorcycle, which had been travelling at less than the posted speed limit. The bike was described by another witness as straddling both southbound lanes of the roadway approximately 10 to 15 feet in front of where the victim lay and pointing in a direction opposite to that of Appellee's turn. Since it is undisputed that Appellee was turning left against on-coming traffic, and the right side of Appellee's car was damaged, it may be reasonably inferred from the skid marks, the position of the victim and of his bike, as well as Appellee's own statement, that Appellee completed the turn by traversing the victim's right of way. It was thus an act of gross negligence. We would also point out that the circumstances, that is, the time of day, the nature of the surroundings, and the fact that all of the arrivals at the scene testified consistently to seeing the headlight of the bike illuminated must be viewed in the light most favorable to the Commonwealth. Thus notwithstanding Appellant's denial of seeing the victim before impact, the evidence is ample for the purposes of making a prima facie case that Appellee was more than slightly negligent.

¶ 9 The trial court attempts to distinguish *Ketterer, supra,* and *Commonwealth v. Johnson,* 376 Pa.Super. 121, 545 A.2d 349 (1988), on which the Commonwealth relies, on the basis that, in contrast to the instant matter, the appellants in both those cases deviated from the standard of care established by an underlying traffic regulation, specifically by speeding, in addition to being intoxicated. The trial court's rationale on this point clearly implies that Appellee, apart from being drunk, was blameless.

¶ 10 We find that there was, in fact, a traffic violation involved here, specifically, 75 Pa.C.S.A. § 3334(a), dismissed by the trial court, which provides as follows:

Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

Here too, in its analysis of the evidence as to this infraction, the trial court failed to

apply the standard requiring it to read the evidence in a light most favorable to the Commonwealth. It again determined that because no eyewitness had been present to contradict Appellee's statement that he had not seen the victim approaching on his motorcycle, no negligence was demonstrated on Appellee's part.[7]

¶ 11 While the trial court is correct that "[i]ntoxication alone does not establish a prima facie case that § 3735.1 has been violated," (Trial Ct. Op. at 16), here there is more than just intoxication. From the evidence adduced, as recounted above, it can reasonably be inferred that the cause of the collision was Appellee's alcohol-induced inability to perceive, to process mentally the perception of an approaching motorcycle, and to wait before proceeding into the intersection. In this regard, *Ketterer, supra,* rather than contrasting with the instant matter, provides an apt parallel. There the appellant, who was speeding under conditions that would normally dictate a slow rate of travel, argued that "any lack of judgment shown by his driving at excessive speed in inclement weather is a matter separate from his inebriation." *Id.* at 803. We disagreed, reasoning that it was permissible for the factfinder to conclude, as it did, that his speed under the circumstances was "a result of his intoxication, which diminished his ability to understand the weather conditions and hence, drive safely." *Id.* at 804. Similarly, in *Johnson, supra,* we observed that the circumstances surrounding the homicide by vehicle, committed as the appellant drove through a red traffic light at a high rate of speed, "were sufficient to permit a finding that [his] violation of the proscription against driving while under the influence of alcohol was a legal cause of the accident." *Id.* at 353. Again, the intoxication and the traffic violation are hardly unrelated phenomena.

¶ 12 Under the principles enunciated in both *Ketterer* and *Johnson,* the question of whether or not the collision would have occurred in the absence of the accused's inebriation is a matter for the factfinder. Unarguably, Appellee did turn into the path of the on-coming motorcycle. This fact is immutable, unaffected by the absence of eyewitnesses, as is the reasonable implication that he may well have done so because of the alcohol he had imbibed. On the basis of these same circumstances, a prima facie case of careless driving, which is defined by 75 Pa.C.S.A. § 3714 as careless disregard for the safety of persons or property, is also established.

¶ 13 Accordingly, we reverse the grant of habeas corpus and remand for further proceedings consistent with this Opinion.

¶ 14 Reversed and remanded. Jurisdiction relinquished.

---

**7.** The court actually concentrates on the lack of evidence concerning Appellee's use or otherwise of his signal to the exclusion of the more pertinent section of the statute which prohibits turning "until the movement can be made with reasonable safety." 75 Pa.C.S.A. § 3334(a).