**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Eric KUTZEL, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 31, 2012.
Filed April 2, 2013.

---

Suzanne M. Swan, Public Defender and Victoria H. Vidt, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney and Francesco L. Nepa, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: MUSMANNO, J., WECHT, J., and COLVILLE, J.*

OPINION BY WECHT, J.:

Eric Kutzel ("Appellant") appeals from his January 3, 2012 judgment of sentence. After careful review, we vacate that judgment.

Around 3 p.m., on May 1, 2010, while crossing the street via a pedestrian crosswalk at the intersection of Merrimac Street and Virginia Avenue in the City of Pittsburgh, M.K., a nine-year-old boy, was struck by Appellant's car. Notes of Testimony ("N.T."), 1/3/2012, at 6–8, 12, 14. While driving on Virginia Avenue, Appellant turned[1] onto Merrimac Street with a green traffic signal, striking M.K. N.T. at 8–9. M.K.'s tooth was broken and his nose was bleeding. N.T. at 10.

Appellant testified that he was not distracted while driving, that he did not see M.K., and that he could not stop in time. N.T. at 25–26. The parties stipulated that Appellant's driver's license was suspended

---

* Retired Senior Judge assigned to the Superior Court.

1. There is some disagreement as to whether Appellant was making a left- or right-hand turn onto Merrimac when his car struck M.K. M.K. testified that it was a right-hand turn. N.T. at 8–9. Officer Dale Ruble also testified that it was a right-hand turn, although he admitted that his Affidavit of Probable Cause stated that it was a left-hand turn. N.T. at 17, 19. Appellant testified that it was a left-hand turn. N.T. at 23. The trial court made no factual findings on this issue. Nonetheless, whether the turn was to the right or left is immaterial to our ultimate conclusion.

at the time of the collision. N.T. at 22. They stipulated as well that M.K. suffered injuries as a result of the accident. N.T. at 22.

Appellant was charged with accident involving death or personal injury while not properly licensed ("AIDPI"), 75 Pa.C.S.A. § 3742.1(a), and driving while operating privilege is suspended or revoked, 75 Pa. C.S.A. § 1543(a). A non-jury trial was held on January 3, 2012. Appellant was found guilty on both charges. On January 3, 2012, Appellant was sentenced to eighteen months of probation on the AIDPI conviction, and was fined $200 on the driving while operating privilege is suspended conviction. Appellant does not challenge the latter conviction on appeal.

On February 2, 2012, Appellant filed a notice of appeal. On February 8, 2012, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on February 29, 2012.

Appellant raises the following issues for our review:

I. Is the evidence insufficient to support the guilty verdict for Accident Involving Death or Personal Injury because the Commonwealth has established no more than that a car accident occurred? Is this not a mere accident, not a crime?

II. Is the evidence insufficient to support [Appellant's] conviction of Accident Involving Death or Personal Injury While Not Properly Licensed, 75 Pa.C.S. § 3742.1(a), because the Commonwealth failed to produce evidence of the requisite *mens rea*, which in this case is criminal negligence?

   A. Does the Commonwealth's claim that [Appellant's] driving under a suspended license in and of itself constituted criminal negligence ele-

vate[ ] the crime to one of absolute liability contrary to Pennsylvania law?

   B. As the evidence would not support holding [Appellant] liable even under a standard of ordinary negligence, does it not follow that his conduct would not be held negligent under the heightened standard of criminal negligence?

Appellant's Brief at 7.

▉ While Appellant frames his argument as two separate issues, his main point is that the Commonwealth did not prove that Appellant had the requisite *mens rea* for AIDPI. Appellant first argues that AIDPI is not a strict liability crime. Appellant relies upon *Commonwealth v. Hurst*, 889 A.2d 624 (Pa.Super.2005), for the proposition that the Commonwealth must prove that Appellant was not properly licensed **and** that he drove in a manner that was criminally negligent. It is not sufficient, Appellant contends, to impute proof of criminal negligence predicated merely upon a finding of driving while not properly licensed. Appellant contends that there was no evidence that Appellant was criminally negligent in the manner in which he drove. In effect, Appellant maintains, sometimes an accident is just an accident. *See* Appellant's Brief at 11–17.

The Commonwealth replies that the fact-finder decided that M.K.'s version of the collision was more plausible, and notes that this Court must review the facts in the light most favorable to the verdict winner. The Commonwealth argues that, because M.K. was crossing within the crosswalk on a green light, Appellant must have violated the statute requiring drivers to abide by traffic-control signals, 75 Pa. C.S.A. § 3112(a)(1)(i), inasmuch as Appellant did not yield the right-of-way to a

pedestrian in a crosswalk. Therefore, Appellant caused the collision. The Commonwealth agrees that AIDPI is not a strict liability crime, and further agrees that the trial court apparently convicted Appellant based solely upon the fact that Appellant was driving while his license was suspended. Nonetheless, relying upon *Commonwealth v. Miller*, 810 A.2d 178 (Pa.Super.2002), the Commonwealth argues that Appellant was guilty of criminal negligence by failing to yield the right of way to M.K. Appellee's Brief at 5–10.

In his reply brief, Appellant notes that he was never charged with a violation of the traffic-control signal statute nor with failure to yield, and that there was no evidence of such violations elicited at trial. Appellant maintains that it was never proven at trial that he saw M.K., and Appellant argues that he cannot be found to have failed to yield to someone that he could not see. Appellant observes that the trial court made no factual findings on this issue. Appellant's Reply Brief at 5–6. Appellant relies upon *Commonwealth v. Heck*, 341 Pa.Super. 183, 491 A.2d 212 (1985), to demonstrate that an accident alone, without knowledge of a hazard, is not proof of criminal negligence. Appellant's Reply Brief at 8–10.

The trial court found that both Appellant and M.K. had a right to proceed, but that a pedestrian's right supersedes the driver's right. N.T. at 33. The trial court found itself "more in line with [M.K.'s] rendition of facts." N.T. at 33–34. The court stated that it did not believe Appellant meant to hit anyone and that Appellant did not expect M.K. "to cross the street the way [M.K.] did"; the court found Appellant guilty based upon Appellant's disregard for the fact that his license was suspended. N.T. at 34–35 ("[H]owever, had [Appellant] complied with the law and had his license, we wouldn't be here

today. This is all born out of a disregard for what his privilege was to drive. He had a privilege, not a right. And even after that privilege was revoked, he still proceeded.... So for that reason, I find him guilty on both counts."). In its opinion, the trial court concluded that Appellant grossly deviated from the standard of care by failing to yield to a pedestrian in the crosswalk. Trial Court Opinion, 3/3/2012, at 3–4.

■ When reviewing the sufficiency of the evidence, this Court must determine whether all of the evidence admitted at trial, when viewed in the light most favorable to the verdict winner, was sufficient to enable the fact-finder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Herb*, 852 A.2d 356, 360 (Pa.Super.2004). In applying this test, this Court may not re-weigh the evidence and may not substitute its judgment for that of the fact-finder. *Id.*

Appellant was convicted of AIDPI, which is defined as follows:

A person whose operating privilege was disqualified, canceled, recalled, revoked or suspended and not restored or who does not hold a valid driver's license and applicable endorsements for the type and class of vehicle being operated commits an offense under this section if the person was the driver of any vehicle and caused an accident resulting in injury or death of any person.

75 Pa.C.S.A. § 3742.1(a).

By its express terms, the statutory offense contains no scienter requirement. In *Hurst*, this Court examined what level of culpability was required for a conviction under the statute. There, the appellant entered an intersection against a red light and struck a police vehicle that was proceeding on a green light. *Hurst*, 889 A.2d at 626. We determined that AIDPI was

not an absolute liability crime, and that criminal negligence was the minimum *mens rea* the Commonwealth must establish to prove AIDPI beyond a reasonable doubt. *Id.* at 628–29.

Therefore, in the instant case, the Commonwealth was required to prove criminal negligence beyond a reasonable doubt. Criminal negligence is defined as follows:

> A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(4).

Citing *Miller*, the Commonwealth contends that Appellant was criminally negligent. In *Miller*, the driver made a left turn against oncoming traffic and hit a motorcyclist. *Miller*, 810 A.2d at 179. The driver flagged down a passing vehicle for help, then left the scene, but returned later. *Id.* at 180. The police interviewed the driver, who stated he did not see the motorcyclist. *Id.* Because the driver showed signs of intoxication, and because he failed field sobriety tests, he was taken for a blood screen. That screen demonstrated that the driver had a blood alcohol level exceeding the legal limit. *Id.* Following a hearing on the driver's pre-trial writ of *habeas corpus*, the trial court dismissed several of the charges, concluding that there was no proof of criminal negligence. *Id.* at 180–81. This Court reversed. Given the testimony concerning damage to the driver's vehicle, the skid marks, and the ending positions of the motorcycle and its

rider, this Court concluded that there was enough evidence to allow a reasonable inference that the driver turned into the motorcyclist's right of way. *Id.* That was sufficient to establish a *prima facie* case for criminal negligence. *Id.*

Our holding in *Miller* turned on whether a *prima facie* case was established at a *habeas corpus* hearing, such that the defendant could be bound over for trial. This is of course a standard of proof very different from that at a criminal trial, and falls well below the level of proof beyond a reasonable doubt. As such, we do not believe that *Miller* is able to bear the weight that the Commonwealth wishes to give it.

Appellant relies on *Heck*. There, the defendant made a left-turn and hit a motorcyclist, who later died. *Heck*, 491 A.2d at 215. There was damage to the defendant's front fender, where he struck the motorcycle. *Id.* The defendant was charged with vehicular homicide, with an underlying traffic violation of failing to yield the right of way on a left turn. *Id.* Given the estimates by witnesses of the speed and distance of the motorcycle, an accident reconstructionist opined that the defendant should have seen the motorcycle approximately two seconds prior to impact. *Id.* at 217. Based upon the jury's verdict, we viewed the evidence as sufficient to support a finding that the defendant should have known that he was making the left turn in violation of the right of way rule. *Id.* However, we concluded that the evidence was insufficient to support a finding of gross negligence, beyond a reasonable doubt, because there was no evidence that the defendant knew, when he started his turn, that the motorcycle was close enough to be a hazard. *Id.* Because the evidence did not show that the defendant proceeded in the face of a known risk, and because there were no outward signs that the de-

fendant saw the motorcycle (*i.e.*, skid or slide marks), there was insufficient evidence of gross negligence. *Id.*

As we explain below, we agree with Appellant that *Heck* is analogous, and that it requires us to vacate his conviction.

The question that we must decide is whether Appellant's conduct amounted to a gross deviation from the standard of care:

> In determining whether a person's actions constitute criminal negligence one must obviously consider the entire situation; and we hold that the determination whether those actions qualify as a "gross deviation" within the meaning of the statute, can depend upon the nature of the standard applicable to a given situation.

*Commonwealth v. Lobiondo*, 501 Pa. 599, 462 A.2d 662, 666 (1983). Instantly, the testimony showed that, while turning, Appellant was travelling slowly when his car hit M.K. N.T. at 24. Appellant was not talking on a cell phone, was not playing with his radio, and was not otherwise distracted.[2] N.T. at 24. Appellant was not under the influence of alcohol or a controlled substance. N.T. at 20.

As in *Heck*, we can conclude that Appellant should have been able to see M.K. crossing the street. It was daytime. While there were parked cars on the street, it was not clear that those cars would have obstructed Appellant's view of M.K. N.T. at 13, 21–22. However, as in *Heck*, there is no evidence that Appellant's failure to perceive M.K. crossing the street represented a gross deviation from the standard of care to which a reasonable driver would adhere. Given the circumstances, we cannot say that Appellant's conduct (*i.e.* turning on a green light at a reasonable rate of speed while not distracted) constituted "a gross deviation from the standard of care that a reasonable person would observe in [Appellant's] situation." 18 Pa.C.S.A. § 302(b)(4).

Affording due deference to the facts as found by the trial court, and viewing those facts in the light most favorable to the Commonwealth as we must, we conclude that Appellant failed to yield the right of way to a pedestrian. Yet, it does not follow that Appellant was criminally negligent.

While Appellant caused the collision through his failure to yield, the record does not support a finding that he was criminally negligent. We hold that the evidence was insufficient to support Appellant's conviction for AIDPI. Appellant's conviction for Driving While Operating Privilege Suspended or Revoked was unchallenged on appeal, and it remains.

Judgment of sentence vacated for conviction under 75 Pa.C.S.A. § 3742.1(a). Appellant discharged as to conviction under 75 Pa.C.S.A. § 3742.1(a). Jurisdiction relinquished.

---

**2.** M.K. testified that Appellant used a cell phone, but M.K. only saw Appellant use it after the accident. N.T. at 10.