J-S38003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK JAMES LAPHAM | : | |
| | : | |
| Appellant | : | No. 262 MDA 2020 |

Appeal from the Judgment of Sentence Entered November 26, 2019,
in the Court of Common Pleas of Berks County,
Criminal Division at No(s):  CP-06-CR-0004379-2018.

BEFORE:   KUNSELMAN, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED NOVEMBER 24, 2020**

Mark James Lapham appeals from the judgment of sentence imposed after the trial court convicted him in a bench trial of accident involving death or personal injury while not properly licensed ("AIDPI"), and four summary convictions under the Vehicle Code:  driving while operating privilege is suspended or revoked, driving on roadways land for traffic, careless driving, and driving vehicle at safe speed.[1]  On appeal, Lapham challenges the sufficiency and the weight of the evidence supporting each conviction, as well as a challenge to the discretionary aspects of his sentence.  After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 75 Pa.C.S.A. §§ 3742.1, 1543(a), 3309(1), 3714(a), and 3361, respectively.

The trial court summarized the pertinent facts as follows:

During the 5 p.m. hour on Friday, July 27, 2018, [Lapham] was traveling westbound in the right lane of a segment of US 422 known as the West Shore Bypass. During this seven-mile segment, US 422 is a limited-access highway with six interchanges, including the "Penn Street/Penn Avenue" cloverleaf interchange in West Reading, Berks County. [Lapham] was driving a silver Jeep Compass.

At the same time, Placido Santana was using the westbound entrance ramp lane from Penn Street/Penn Avenue (US 422 Business) trying to merge onto the West Shore Bypass. This entrance ramp is located on the right side of US 422 and is the final ramp of this interchange for vehicles traveling west. This interchange is very tight, and this westbound ramp is especially tricky because US 422 Business intersects/merges into US 422 west within a curve.

During a non-jury trial held May 20, 2019, Santana testified *via* an interpreter that [Lapham] rear-ended him while Santana was completely within the entrance ramp lane. Santana stated there was at least one car in front of him on the entrance ramp waiting to merge onto US 422, and that at no time prior to the accident did he leave the entrance ramp lane.

It is undisputed that Santana had proceeded beyond the yield signs and was located within the acceleration portion of the lane close to the junction of the ramp and freeway when he was hit; however, given the time of day (evening rush hour on a weekday) traffic on the ramp was at or near a standstill as cars waited for a chance to merge from US 422 Business (Penn Street/Penn Avenue westbound) onto US 422 westbound (West Shore Bypass). It is also undisputed that after striking Santana's vehicle, [Lapham's] Jeep Compass veered right and crashed into the guardrail. [Lapham's] vehicle came to a stop before the entrance ramp terminated (*i.e.*, at a point of the highway where a portion of the US 422 Business ramp was still clearly marked).

Trial Court Opinion, 4/8/20, at 2 (citation to record omitted).

The trial court also noted that testimony from the police officer who responded to the accident and spoke with Lapham at the scene, differed from Lapham's testimony. The court explained this disparity as follows:

> To summarize, Santana testified that he never left the entrance ramp lane. Officer [Kyle] Bohn testified that [Lapham] told him at the time of the accident that he ([Lapham]) swerved from his through lane to avoid a vehicle stopped in his lane ahead of him, and in doing so rear-ended Santana. [Lapham] testified that Santana started to enter US 422 from the ramp, and that [Lapham] swerved to avoid Santana. [Lapham] further testified that Santana then turned back into the entrance ramp lane ("we did kind of like a twist or type of a motion"), and that is why the rear-end collision took place in the ramp lane rather than the through lane.

Trial Court Opinion, 4/8/20, at 5.

The court convicted Lapham on all of the charges. Although the trial court scheduled sentencing for June 24, 2019, Lapham failed to appear, and the court issued a bench warrant for his arrest. Lapham was detained on November 26, 2019. That same day, the trial court sentenced Lapham to a two-year probationary term for the accident involving death or personal injury while not properly licensed, and imposed fines for summary convictions. Lapham filed a timely post-sentence motion in which he challenged the sufficiency and weight of the evidence supporting his convictions and a discretionary challenge to the sentence the trial court imposed. The trial court denied the motion. This appeal followed. Both Lapham and the trial court have complied with Pa.R.A.P. 1925.

As noted above, on appeal, Lapham challenges the sufficiency and the weight of the evidence supporting his AIDPI conviction, as well as three of his four traffic offenses.[2] In addition, Lapham challenges the discretionary aspects of his sentence.

With regard to Lapham's sufficiency challenges, we first reiterate our scope and standard of review for such claims, and then we will address the evidence supporting each conviction separately.

I.

With regard to his sufficiency challenge, our standard and scope of review are well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the

_____

[2] Lapham acknowledges that his challenge to the sufficiency of the evidence supporting his fourth summary offense, driving while operating privilege is suspended or revoked, is waived on appeal because trial counsel conceded this fact during Lapham's trial. *See* Lapham's Brief at 10 n.1.

above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (citations omitted). "Where the evidence offered to support a verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law." *Commonwealth v. Ortiz*, 160 A.3d 230, 234 (Pa. Super. 2017) (citation omitted). A claim challenging the sufficiency of the evidence is a question of law. *Id.* at 233.

Lapham first challenges the sufficiency of the evidence supporting his conviction for accidents involving death or personal bodily injury while not properly licensed. According to Lapham, there was "no evidence presented at trial to establish [he] was criminally negligent." Lapham's Brief at 10. This offense is defined as follows:

> A person whose operating privilege was disqualified, canceled, recalled, revoked or suspended and not restored or who does not hold a valid driver's license and applicable endorsements for type and class of vehicle being operated commits an offense under this section if the person was the driver of any vehicle and caused an accident resulting in injury or death of any person.

75 Pa.C.S.A. § 3742.1(a).[3]

---

[3] Effective December 24, 2018, the Pennsylvania legislature amended subsection (a) to include two alternative bases for the offense. Subsection (a)(1) provides similar language as quoted above, while subsection (a)(2)

In **Commonwealth v. Hurst**, 889 A.2d 624, 626 (Pa. Super. 2005), this Court agreed with Hurst that the above statute did not "contain a *scienter* requirement on its face." Nonetheless, we concluded that the criminal statute was not an "absolute liability statute." **Id.** at 28. As we explained:

> [Hurst's] violation of Section 3742.1 was a misdemeanor of the second degree, and not a summary offense, which was punishable by a maximum penalty of two years in prison. **See** 18 Pa.C.S.A. § 1104. The nature of the offense, which involves a causation element, and the potentially severe penalty are sufficient *indicia* that the legislature did not intend to eliminate the *mens rea* element and make accidents involving death or personal injury while a driver is not properly licensed a strict liability crime.

**Hurst**, 889 A.2d at 628.

Thus, in **Hurst**, we had to determine the required culpability for the vehicular offense at issue under the Crimes Code, specifically 18 Pa.C.S.A. §§ 302 and 305. **Id.** After considering the language of these sections, we concluded that:

> 18 Pa.C.S.A. § 302(a) establishes the culpability requirements for a violation of Section 3742.1 of the [Vehicle Code], and therefore, criminal negligence as defined in 18 Pa.C.S.A. § 302(b)(4) is the minimum level of culpability the Commonwealth was required to establish at trial.

provides "or . . . acted with negligence that contributed to causing the accident injury or death of a person."

*Id.* at 629. This conclusion was supported by appellate decisions which determined the scienter requirement for similar Vehicle Code violations. *See id.* at 629-30.

Section 302(b)(4) defines the concept of "criminal negligence" as follows:

> A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(4).

In *Commonwealth v. Kutzel*, 64 A.3d 1114 (Pa. Super. 2013), this Court considered how to determine whether an actor's conduct constituted a gross deviation from the standard of care. We reiterated:

> In determining whether a person's actions constitute criminal negligence one must obviously consider the entire situation; and we hold that the determination whether those actions qualify as a "gross deviation" within the meaning of the statute, can depend upon the nature of the standard applicable to a given situation.

*Kutzel*, 64 A.3d at 1119 (citation omitted).

Here, the trial court rejected Lapham's claim that the Commonwealth failed to prove that his actions on the day of the accident constituted criminal negligence. The court, as fact finder, accepted Santana's testimony that he

suffered injuries from the accident and Trooper Bohn's testimony that Lapham did not have a valid driver's license at the time of the collision. The trial court concluded that, "[b]ased on this evidence and the credible testimony of Santana and Officer Bohn concerning how the accident happened, the court denied [Lapham's] challenges to the sufficiency of the evidence as to AIDPI. Trial Court Opinion, 4/8/20, at 7.

Addressing Lapham's claim to the contrary, the trial court concluded:

> [Lapham's] argument is based on his own testimony that he rear-ended Santana's vehicle only after swerving to avoid a bigger accident. Essentially, he claims that he should be found not guilty pursuant to the sudden emergency doctrine. In this way, [Lapham] couches a weight of the evidence argument as one challenging sufficiency. [Lapham] seemingly contends that there was no evidence that he was criminally negligent in the manner in which he drove, but his claim requires that the fact finder believe his testimony and ignore the Commonwealth's witnesses. This is a weight of the evidence challenge – not sufficiency.

Trial Court Opinion, 4/8/20, at 7 n.iv.

Our review of the record supports the trial court's conclusion. In arguing to the contrary, Lapham now asserts that "[t]he Commonwealth did not offer testimony concerning [his] speed or sufficient details on his driving and traffic conditions immediately preceding the accident," and challenges Santana's testimony, based on his observations from his rearview mirror, as "unclear." Lapham's Brief at 28. In addition, Lapham likens the situation in his case to that in **Kutzel**, **supra**. We cannot agree.

First, as a matter of credibility, the trial court accepted Santana's testimony regarding the accident, as well as Officer Bohn's testimony regarding statements Lapham made at the accident scene. Because these credibility determinations supported by the record, we cannot disturb them. **Hansley**, **supra**. As the trial court noted, Lapham actually challenges the weight of the evidence supporting his convictions rather than the sufficiency.

Moreover, Lapham's reliance upon **Kutzel** is misplaced, as the facts of that case are easily distinguishable. In **Kutzel**, after observing the traffic signal turn green, Kutzel turned right and struck a nine-year-old child that was using a crosswalk. **Kutzel**, 64 A.3d at 1115. We vacated Kutzel's AIDPI conviction because there "was no evidence that [Kutzel's] failure to perceive [the child] crossing the street represented a gross deviation from the standard of care to which a reasonable driver would adhere." **Id.** at 1119. Here, the facts, as accepted by the trial court and supported by the record, paint a markedly different situation that lead to the collision in this case.

Finally, Lapham's reliance upon **Commonwealth v. Heck**, 491 A.2d 212 (Pa. Super. 1985), is also misplaced. In that case, a jury convicted Heck of vehicular homicide after his northbound vehicle made a left-hand turn and collided with a motorcyclist traveling southbound. We vacated Heck's judgment of sentence after concluding that Heck was not criminally negligent because the elevation of the intersection where the collision occurred may have interfered with Heck's ability to observe the motorcycle. **Id.** at 217-18. In analogizing to **Heck**, Lapham argues that his "failure to apprehend a hazard

in time was not a gross deviation from a reasonable standard of care." Lapham's Brief at 30. The hazard upon which Lapham bases this claim—his testimony that Santana's vehicle entered the highway—was expressly rejected by the trial court as fact finder.

Here, Lapham contends "the combined factors of rush hour traffic and Santana's unexpected maneuver combined to cause that accident at issue." Lapham's Brief 29. As, noted above, the trial court found credible Santana's testimony that he never left the entrance ramp and therefore accepted evidence that Lapham's actions represented a gross deviation from the standard of care. *See also Commonwealth v. Best*, 120 A.3d 329, 342 (Pa. Super. 2015) (holding evidence sufficient to uphold AIDPI conviction when there was evidence from which the jury could conclude that the defendant caused the head-on collision, that the victims suffered personal injury, and the defendant stipulated at trial that his license was suspend at the time of the accident). Thus, Lapham's first sufficiency challenge fails.

Lapham next challenges the sufficiency of his summary conviction for driving on roadways laned for traffic. Section 3309 of the Vehicle Code provides, in pertinent part:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S.A. § 3309(1).

Here, the trial court rejected Lapham's claim that "the Commonwealth failed to prove, beyond a reasonable doubt, that [he] either failed to drive as practicable entirely within a single lane or moved from a lane without ascertaining whether the movement could be made [safely]." Trial Court Opinion, 4/8/20, at 8 (citing Lapham's Rule 1925(b) Statement at ¶ 4). The court explained:

> [Lapham] and Officer Bohn both testified that the West Shore Bypass is divided into two lanes. Both the Commonwealth and [Lapham] presented photographic evidence that the lanes are clearly marked. Finally, there is no question that [Lapham] swerved out of his lane of travel and into the entrance ramp lane, and given that [Lapham] violently rear-ended Santana's vehicle the court inferred that [Lapham] did not first ascertain that the movement could be made with safety.

*Id.* at 9.

Our review of the record supports this conclusion. Lapham asserts that because "there were no police observations of [him] failing to drive in his lane" and Santana's testimony was "unclear," there was "no testimony whatsoever [that he] failed to maintain his lane while driving." Lapham's Brief at 32. Given the totality of the circumstances surrounding the collision, the trial court properly concluded that Lapham was guilty of this traffic offense. Once again, Lapham's true argument goes to the weight the trial court as fact finder accorded the trial testimony, not the sufficiency. *See Commonwealth v. Palo*, 24 A.3d 1050, 1055 (Pa. Super. 2011) (concluding that the appellant attacks the weight rather than the sufficiency of the evidence when his

argument is directed entirely to the credibility of the Commonwealth's chief witness). Thus, this sufficiency challenge fails.

Lapham next challenges his careless driving conviction. Section 3714 of the Vehicle Code provides: "Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense." 75 Pa.C.S.A. § 3714(a). Careless disregard is defined as "less than willful and wanton conduct, but more than ordinary negligence or the mere absence of care under the circumstances." ***Commonwealth v. Cathey***, 645 A.2d 250, 250 (Pa. Super. 1994) (citation omitted).

Lapham asserts that the Commonwealth "cannot support a verdict for Careless Driving merely because an accident occurred." Lapham's Brief at 34. The trial court disagreed, concluding that "[p]roof of careless disregard for the safety of persons or property in this case can be inferred from the fact that [Lapham] was unable to stop his vehicle without first striking the car in front of him, and instead had to swerve into the entrance ramp lane." Trial Court Opinion, 4/8/20, at 9. Our review of the record supports this conclusion. Thus, Lapham's sufficiency challenge fails.

In his final sufficiency challenge, Lapham claims that the Commonwealth failed to present sufficient evidence to support his conviction for driving at a safe speed. This traffic offense is defined, in pertinent part, as follows:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead.

75 Pa.C.S.A. § 3361.

Lapham asserts that the Commonwealth failed to present evidence that he drove his vehicle at a speed greater than what was reasonable under the circumstances since "[n]o testimony [was] offered whatsoever concerning the speed of [his] vehicle." Lapham's Brief at 36. The trial court rejected this claim:

> As noted, the court believed the testimony of Officer Bohn; namely, that [Lapham] said to the officer at the time/scene of the collision that he swerved from his lane into the entrance ramp lane to avoid a vehicle that was traveling in the same lane of traffic. The court did not believe [Lapham's] testimony that Santana swerved into the through lane. [Based] on Officer Bohn's testimony, it is clear that [Lapham] was driving at a speed greater than permitted him to bring his vehicle to a stop within the assured clear distance ahead. If [Lapham] had been driving at an appropriate speed, he could have stopped within his own lane instead of swerving.

Trial Court Opinion, 4/8/20, at 10.

Once again, our review of the record supports this conclusion. Lapham cites us to no case authority that requires that the Commonwealth establish a specific rate of speed in order to convict a person of this offense. "Speeding alone does not violate the statute." **Commonwealth v. Heberling**, 678 A.2d 794, 795 (Pa. Super. 1996). Rather, "[t]here must be proof of speed that is unreasonable or imprudent under the circumstances[.] **Id.** Here, Officer Bohn testified that Lapham told him his Jeep went airborne after hitting Santana's vehicle and came to rest atop the guardrail. **See** N.T., 5/20/19, at 38. From such evidence the trial court could appropriately conclude that Lapham was

guilty of driving too fast for the conditions presented. Thus, his final sufficiency claim fails.

In sum, we conclude that the record supports the trial court's conclusion that sufficient evidence supports all of the convictions challenged by Lapham.

## II.

We next address Lapham's challenge to the weight of the evidence supporting his convictions. When reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. **Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.**
>
> * * *
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> * * *
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. **Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.**

***Commonwealth v. Clay***, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations omitted) (emphasis added).  Absent an abuse of discretion, the trial court's decision will not be disturbed.  ***See Commonwealth v. Griffin***, 515 A.2d 865, 869 (Pa. 1986).  An abuse of discretion "is not merely an error in judgment.  Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law." ***Commonwealth v. West***, 937 A.2d 516, 521 (Pa. Super. 2007) (citation omitted).  By contrast, a proper exercise of discretion "conforms to the law and is based on the facts of record." ***Id.***

In denying Lapham's weight claim, the trial court explained:

> [Lapham] argued in his post-sentence motion, and avers . . . that [t]he guilty verdicts were contrary to the weight of the evidence where [Santana's] testimony about the accident was contradictory, inconsistent with prior testimony and not credible.  First, this claim ignores the testimony of Officer Bohn and documentary evidence.  Moreover, [Lapham] does not identify how or why Santana's testimony was contradictory and/or inconsistent with prior testimony, and there is no support for these claims in the record.

Trial Court Opinion, 4/8/20, at 5 (quotation marks and citation omitted).  The court then noted that, as fact finder, it was its job to pass upon the credibility of witnesses and that the court could consider the interest of a witness in the outcome of the trial when making this determination.  ***See id.*** at 5-6.  The court then expressly stated that "it found both Santana and Officer Bohn to be credible and did not believe [Lapham's] trial testimony." ***Id.*** at 6.  Thus, the trial court stated that it properly denied Lapham's weight challenge.

Our review of the record supports this conclusion. Lapham's claims to the contrary are without merit in that in his brief he now provides specific instances where he believes Santana's testimony was inconsistent and refers to his testimony, which the trial court found unworthy of belief. **See** Lapham's Brief at 38. In essence, Lapham asks this Court to reassess the evidence and substitute our judgment for that of the trial court. This is not a proper appellate function when considering a weight challenge. **Clay**, **supra**. Thus, Lapham's weight challenge fails.

III.

Lapham's final claim challenges the discretionary aspects of his sentence. This Court has explained that, to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

**Commonwealth v. Colon**, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting **Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa. Super. 2013)).

Here, Lapham satisfied the first three requirements under **Colon**. Accordingly, we must determine whether he has raised a substantial question for our review. An appellant raises a "substantial question" when he "sets

forth a plausible argument that the sentence violates a provision of the [S]entencing [C]ode or is contrary to the fundamental norms of the sentencing process." ***Commonwealth v. Crump***, 995 A.2d 1280, 1282 (Pa. Super. 2010) (citation omitted).

The Commonwealth contends that Lapham's Rule 2119(f) statement is deficient because Lapham "does not prove any fact or argument in the Statement whatsoever." Commonwealth's Brief at 24. A reading of Lapham's two-page statement reveals that it consists of no more than boilerplate statements of law and fails to provide any facts or arguments applying this case law to the circumstances surrounding the sentence imposed. In this situation, this Court has found waiver of a sentencing challenge. ***See e.g.***, ***Commonwealth v. Williams***, 562 A.2d 1385, 1389 (concluding that when an "appellant's Rule 2119(f) statement contains no factual averments which suggest that the sentencing scheme as a whole has been compromised, but instead merely paraphrases appellant's argument as to why the sentencing court abused its discretion in imposing the allegedly excessive sentence, the petition for permission to appeal must be denied").

As this Court more recently has explained, however, we can look at both the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists. ***See Commonwealth v. Johnson-Daniels***, 167 A.3d 17, 27 (Pa. Super. 2017). Although he provides no facts regarding his sentence in his 2119(f) statement, in his statement of the question presented on appeal, Lapham asserts that his sentence is

"excessive when considering the protection of the public, the gravity of the offense as it related to the impact on the life of [Santana] and on the community, and [his] rehabilitative needs. Lapham's Brief at 12. Although Lapham should have reiterated such statements in his Rule 2119(f) statement, we find that he has raised a substantial question. *See Johnson-Daniels*, 167 A.3d at 27; *Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) (concluding that an excessive sentence claim coupled with a claim that the court failed to consider the defendant's mitigating sentences and his rehabilitative needs raises a substantial question).

Our standard of review when deciding an excessive sentencing claim is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, is not shown merely to be an error in judgment. Rather the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shull*, 148 A.3d 820, 831 (Pa. Super. 2016) (citation omitted).

At sentencing, the Commonwealth recommended that the trial court sentence Lapham to a two-year probationary term, and defense counsel requested the court impose a lesser term of probation for several reasons, including the fact that Lapham had been diagnosed with post traumatic stress

disorder. In response, the trial court stated its belief that a two-year term of probation would benefit Lapham:

> [I]t seems to me that that the supervision is probably going to be a good thing as opposed to a punitive thing. He has a prior record score of zero. And he was convicted of a misdemeanor of the second degree, [for] which two years is the maximum. But it seems to be like two years of supervision will probably be a good thing.

N.T., 11/26/19, at 4. After Lapham's allocution, and after he answered a few of the trial court's questions, the trial court again stated, "Yeah. I mean, I'm not in any way, shape or form trying to punish you. I'm just – I just think that supervision will be a good thing." *Id.* at 6.

Our review of the record supports the trial court's conclusions. In arguing to the contrary, Lapham assert that the trial court "failed to give appropriate weight to the mitigating factors[.]" Lapham's Brief at 41. Additionally, he claims that because no restitution was included as part of his sentence, a long probationary term was inappropriate. *Id.* Finally, Lapham asserts that his "mental health diagnoses and need for treatment and rehabilitation show that the rehabilitation factor should have been further considered by the [trial court] in the sentence handed down." *Id.*

As noted above, the trial court did consider Lapham's rehabilitative needs by determining that a two-year probation term of supervision would aid him in his treatment and diagnoses. In essence, Lapham is asking this Court to substitute our judgment for that of the trial court. This we will not do. ***Williams***, ***supra***.

In sum, because all of Lapham's claims are without merit, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2020