J-S04020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RAMON BLANCO | : | |
| | : | |
| Appellant | : | No. 2290 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 5, 2022
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0004230-2020

BEFORE: MURRAY, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED MAY 26, 2023**

Appellant, Ramon Blanco, appeals *nunc pro tunc* from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his bench trial convictions for accidents involving death or personal injury while not properly licensed ("AIDPI"), aggravated assault by vehicle, reckless driving, and related offenses.[1] We remand this case to the trial court for specific findings regarding Appellant's motion for dismissal pursuant to Pa.R.Crim.P. 600.

The relevant facts of this appeal are as follows. At approximately 11:16 p.m. on August 5, 2019, Jamiee Johnstonbaugh ("Victim") was driving his

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3742.1(a)(1), 3732.1(a), and 3736(a), respectively.

Honda Pilot eastbound on Sumneytown Pike in Lower Gwynedd Township. Victim stopped for a red light at Sumneytown Pike's intersection with DeKalb Pike. When the light changed, Victim proceeded through the intersection. At the same time, Appellant was approaching the intersection while driving a Chevrolet Suburban northbound on DeKalb Pike. Despite being controlled by a red light, Appellant's vehicle barreled into the intersection and collided with Victim's vehicle. After the crash, Appellant fled the scene on foot. Eyewitnesses helped Victim out of his vehicle, and an ambulance transported Victim to a local hospital for treatment. Victim suffered various injuries due to the crash, including broken bones and a concussion.

Police subsequently apprehended Appellant, and the Commonwealth initially filed a criminal complaint on August 7, 2019. Appellant proceeded to a preliminary hearing, where the magistrate dismissed certain charges. This prompted the Commonwealth to refile the criminal complaint on February 26, 2020. The trial court opinion set forth the remaining procedural history as follows:

> The Commonwealth filed a bill of information charging [Appellant] with the following offenses: [AIDPI] (count 1); accidents involving damage to attended vehicle or property (count 2); duty to give information and render aid (count 3); driving without a license (count 4); reckless driving (count 5); failure to stop at red signal (count 6); aggravated assault by vehicle (count 7); accidents involving death or personal injury (count 8); and recklessly endangering another person (count 9).
>
> On July 29, 2021, [Appellant] filed a motion for dismissal pursuant to Rule 600(D)(1) and **Commonwealth v.**

*Harth*[, ___ Pa. ___, 252 A.3d 600 (2021)]. On September 10, 2021, the Commonwealth filed a response to this motion. The court held a hearing regarding this motion on September 13, 2021. At the conclusion of the hearing, the court directed the parties to submit memoranda. By order dated September 22, 2021, the court denied [Appellant's] motion.

The court conducted a bench trial on October 13, 2021. At the conclusion of the trial, the court found [Appellant] guilty on all counts and directed the completion of a pre-sentence investigation report.

On January 5, 2022, the court imposed the following sentence: count 7, 11 months and 14 days to 23 months and 29 days in the Montgomery County Correctional Facility ("MCCF") to date from August 7, 2019; count 1, 9 to 23 months' incarceration in MCCF to run concurrently with count 7; count 8, 9 to 23 months' incarceration in MCCF to run concurrently with count 7; and count 9, 4 to 23 months' incarceration in MCCF to run concurrently with count 7. The court did not impose further penalty with respect to counts 2-6. Thus, the court imposed an aggregate sentence of 11 months and 14 days to 23 months and 29 days' incarceration in MCCF to date from August 7, 2019.

The court also directed [Appellant] to pay restitution of $1,000 to Aurea Meneses, the owner of the vehicle operated by [Appellant] at the time of the accident, and $1,763 to GEICO.

On January 20, 2022, [Appellant] filed a post-sentence motion in which he sought: (1) a dismissal of all charges pursuant to Pa.R.Crim.P. 600 and ***Commonwealth v. Harth*** and (2) judgment of acquittal as to Counts 1, 2, and 7-9 on the basis that the Commonwealth had failed to prove the required *mens rea* of criminal negligence or recklessness for these counts. By order dated May 3, 2022, the court denied [Appellant's] post-sentence motion.

On June 3, 2022, [Appellant] filed an appeal from: (1) the sentence imposed on January 5, 2022 and (2) the May 3, 2022 order denying his post-sentence motion. By order filed on July 13, 2022, the Superior Court quashed that

- 3 -

appeal as untimely filed because [Appellant] had filed his post-sentence motion more than 10 days after the January 5, 2022 imposition of sentence.

On August 3, 2022, [Appellant] filed a [Post Conviction Relief Act ("PCRA")[2]] petition to reinstate appellate rights *nunc pro tunc* on the basis that his trial counsel had filed his post-sentence motion late. By order dated August 5, 2022 the court directed the Commonwealth to file an answer to this PCRA petition. On August 26, 2022, the Commonwealth filed a reply stating it did not oppose [Appellant's] request for the *nunc pro tunc* reinstatement of his appeal rights. By order dated August 26, 2022, the court granted [Appellant's] PCRA petition and stated [Appellant] may file an appeal *nunc pro tunc* no later than 30 days from the date of the filing of the order. Pursuant to this order, [Appellant] filed the instant appeal on September 1, 2022[.]

(Trial Court Opinion, filed 10/24/22, at 1-3) (internal footnotes and some capitalization omitted). Also on September 1, 2022, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on September 20, 2022.

Appellant now raises three issues on appeal, which we have reordered as follows:

Was the evidence insufficient to sustain [Appellant's] conviction, in that the Commonwealth's evidence failed to prove that [Appellant] was operating his vehicle in a "criminally negligent" manner at the time of the accident when it demonstrated only that [Appellant] fell asleep while driving?

Did the [trial] court err in failing to calculate [Appellant's] Pa.R.Crim.P. 600 mechanical run date from the date of filing

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

of the initial criminal complaint against [Appellant] where the Commonwealth was not duly diligent in filing a second complaint?

Did the [trial] court err in denying [Appellant's] motion to dismiss pursuant to Pa.R.Crim.P. 600 where the Commonwealth failed to establish the requisite due diligence in providing discovery that was necessary before court delay attributable to COVID-19 emergency orders could be considered?

(Appellant's Brief at 3).

As a prefatory matter, the trial court suggests that we must quash this appeal. The court emphasizes the PCRA provision mandating that a petitioner must be "currently serving a sentence of imprisonment, probation or parole for the crime" to be eligible for relief. (Trial Court Opinion at 4) (quoting 42 Pa.C.S.A. § 9543(a)(1)(i)). The court contends that Appellant's sentence for the instant offenses expired on August 5, 2021; thus, Appellant had completed his sentence by the time he filed his PCRA petition on August 3, 2022. The court concludes that Appellant "was not eligible for PCRA relief," and it "lacked **jurisdiction**" to consider the petition and reinstate Appellant's direct appeal rights *nunc pro tunc*. (**Id.** at 6) (emphasis added).

In response, Appellant cites **Commonwealth v. Fields**, 197 A.3d 1217, 1222 (Pa.Super. 2018) (*en banc*) (plurality), *appeal denied*, 651 Pa. 593, 206 A.3d 1025 (2019), for the proposition that "[t]he plain language of section 9543 does not mention the jurisdiction of the PCRA court[.]" (Appellant's Brief at 21). Appellant maintains that the court possessed jurisdiction to grant relief, which the Commonwealth did not oppose. Absent some action by the

Commonwealth, Appellant insists that any challenge to the grant of PCRA relief is waived, and "the only matter currently before this … Court is [Appellant's] direct appeal filed [*nunc pro tunc*] on September 1, 2022." (**Id.**) We agree.

"[I]n drafting the PCRA, the General Assembly included 42 Pa.C.S. § 9545, a separate provision addressing 'Jurisdiction and proceedings.'" **Fields, supra** at 1222. "Had the General Assembly intended the eligibility requirements of section 9543 to be jurisdictional prerequisites, it would have included that provision within section 9545." **Id.** "Accordingly, we hold that the requirements set forth in section 9543 establish only a petitioner's eligibility for post-conviction relief, and do not implicate the PCRA court's jurisdiction to act on a petition." **Id.** at 1223.

Here, this Court's interpretation of the relevant provisions of the PCRA refutes the trial court's conclusion that it "lacked jurisdiction" to act on Appellant's petition. **See id.** To the extent that the PCRA court might have erred in granting relief where Appellant was ineligible, the Commonwealth waived any challenge to the PCRA court's ruling by failing to appeal from the order granting *nunc pro tunc* relief. **See Commonwealth v. Bryant**, 566 Pa. 307, 780 A.2d 646 (2001) (reiterating that PCRA court's order granting relief in part was final order that petitioner or Commonwealth could have appealed, and failure to file notice of appeal would have waived review of PCRA court's decision). Consequently, we proceed to address the issues Appellant now raises in this *nunc pro tunc* appeal from his judgment of sentence.

- 6 -

In his first issue, Appellant claims that the offense of AIDPI requires a *mens rea* of "criminal negligence," and the offenses of aggravated assault by vehicle and reckless driving "share an equivalent *mens rea* of recklessness and gross negligence." (Appellant's Brief at 35, 37). Appellant insists that the Commonwealth failed to prove these mental states where "the only evidence presented … was [Appellant's] statement that he had fallen asleep while driving."[3] (*Id.* at 39). Appellant also argues that "the fact that [he] was speeding shortly before the crash" does not establish the requisite recklessness. (*Id.* at 40). Appellant concludes that the Commonwealth presented insufficient evidence to support these convictions, and he is entitled to an arrest of judgment for these offenses. We disagree.

Our standard of review for sufficiency claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every

---

[3] At trial, a detective from the Lower Gwynedd Township Police Department testified that he interviewed Appellant about the collision on August 6, 2019. (*See* N.T. Trial, 10/13/21, 105). During the interview, Appellant said he "fell asleep at the wheel, at which point the accident happened." (*Id.* at 115).

element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Tucker*, 143 A.3d 955, 964 (Pa.Super. 2016), *appeal denied*, 641 Pa. 63, 165 A.3d 895 (2017) (quoting *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011)).

The Motor Vehicle Code ("MVC") defines the offense of AIDPI as follows:

**§ 3742.1. Accidents involving death or personal injury while not properly licensed**

**(a) Offense defined.—**A person whose operating privilege was disqualified, canceled, recalled, revoked or suspended and not restored or who does not hold a valid driver's license and applicable endorsements for the type and class of vehicle being operated commits an offense under this section if the person was the driver of any vehicle and:

> (1) caused an accident resulting in injury or death of a person

75 Pa.C.S.A. § 3742.1(a).

By its express terms, the statutory offense contains no scienter requirement. In [*Commonwealth v. Hurst*, 889 A.2d 624 (Pa.Super. 2005)], this Court examined what level of culpability was required for a conviction under the statute. There, the appellant entered an intersection against a red light and struck a police vehicle that was proceeding on a green light. We determined that AIDPI was not an absolute liability crime, and that criminal negligence was the minimum *mens rea* the Commonwealth must establish to prove AIDPI beyond a reasonable doubt.

*Commonwealth v. Kutzel*, 64 A.3d 1114, 1117-18 (Pa.Super. 2013).[4]

"A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct." 18 Pa.C.S.A. § 302(b)(4). "The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." *Id.*

> In determining whether a person's actions constitute criminal negligence one must obviously consider the entire situation; and we hold that the determination whether those actions qualify as a "gross deviation" within the meaning of the statute, can depend upon the nature of the standard applicable to a given situation.

*Kutzel, supra* at 1119 (quoting *Commonwealth v. Lobiondo*, 501 Pa. 599, 606, 462 A.2d 662, 666 (1983)).

The MVC defines the offense of aggravated assault by vehicle as follows:

**§ 3732.1.  Aggravated assault by vehicle**

  **(a)  Offense.—**Any person who recklessly or with gross negligence causes serious bodily injury to another person while engaged in the violation of any law of this

---

[4] Our Legislature amended Section 3742.1 in 2018. *See* Act of Oct. 24, 2018, P.L. 925, No. 153, § 3, effective in 60 days. The version of the statute in effect at the time of *Kutzel* defined the offense of AIDPI as follows: "A person whose operating privilege was disqualified, canceled, recalled, revoked or suspended and not restored or who does not hold a valid driver's license and applicable endorsements for the type and class of vehicle being operated commits an offense under this section if the person was the driver of any vehicle and caused an accident resulting in injury or death of any person."

Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except section 3802 (relating to driving under influence of alcohol or controlled substance), is guilty of aggravated assault by vehicle, a felony of the third degree when the violation is the cause of the injury.

75 Pa.C.S.A. § 3732.1(a).

"A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." 18 Pa.C.S.A. § 302(b)(3). "The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." *Id.*

The MVC defines the offense of reckless driving as follows:

**§ 3736.  Reckless driving**

**(a) General rule.—**Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving.

75 Pa.C.S.A. § 3736(a).

[T]he *mens rea* necessary to support the offense of reckless driving is a requirement that [the defendant] drove in such a manner that there existed a substantial risk that injury would result from his driving, *i.e.*, a high probability that a motor vehicle accident would result from driving in that manner, that he was aware of that risk and yet continued to drive in such a manner, in essence, callously disregarding the risk he was creating by his own reckless driving.

***Commonwealth v. Bullick***, 830 A.2d 998, 1003 (Pa.Super. 2003).

Instantly, the Commonwealth presented witnesses who described Appellant's driving on the night of the crash. Tyler Mitchell testified that he was driving northbound on DeKalb Pike shortly before the collision. (*See* N.T. Trial at 84). While traveling in the center lane, Mr. Mitchell saw "a person from behind me, from a high rate of speed, basically flying, and basically swerved towards and around me" on the right. (*Id.* at 85). Mr. Mitchell specified that the vehicle that passed him was "definitely a Suburban." (*Id.* at 87). Mr. Mitchell described the aggressive maneuvers performed by the Suburban: "Like I say, it cut us off, and it kind of like veered me off to the side a little bit[.]" (*Id.* at 87). Mr. Mitchell also explained that he was driving "about the speed limit," so he knew the Suburban was moving at a higher rate of speed to pass him. (*Id.* at 88).

Mr. Mitchell did not actually see the collision between Appellant and Victim's vehicles. Seconds after the crash, Mr. Mitchell saw the accident scene. (*Id.* at 89). Upon arriving at the intersection, the light controlling Mr. Mitchell's lane of travel was red. (*Id.*) Thereafter, Mr. Mitchell stopped to render aid to Victim. (*Id.* at 90). While assisting Victim, Mr. Mitchell saw the driver of the Suburban flee the scene. (*Id.* at 91).

The Commonwealth also presented testimony from Thaddeus Brown, who was driving home from work on the night of the collision. Mr. Brown was driving eastbound on Sumneytown Pike when he stopped for a red light at the intersection with DeKalb Pike. (*Id.* at 64-65). Mr. Brown "was the second car

at the traffic light," with Victim's vehicle in front of him. (*Id.* at 65). When the light turned green, Victim and Mr. Brown's vehicles proceeded to the intersection. Mr. Brown unequivocally testified that Victim had a green light to proceed.[5] (*Id.* at 69). At that point, Mr. Brown saw the Suburban "go around the [northbound] traffic" that was stopped for a red light on DeKalb Pike. (*Id.* at 67). The Suburban entered "the shoulder area" of the road to execute this maneuver. (*Id.*) Thereafter, the Suburban collided with Victim's vehicle. The Suburban did not attempt to brake before the collision. (*Id.* at 73).

After the collision, Mr. Brown stayed at the scene because "[i]t was a horrific crash, from what I witnessed, so I just wanted to make sure everyone was okay." (*Id.* at 71). Mr. Brown explained that the impact of the crash caused the Suburban to ricochet off Victim's vehicle and hit a telephone poll. When the Suburban came to a stop, Mr. Brown watched the driver climb out through the window and run away from the scene.

Here, the record belies Appellant's assertion that he simply fell asleep at the wheel. Mr. Mitchell's testimony established that Appellant conducted a high-speed, passing maneuver on the right side of Sumneytown Pike before its intersection with DeKalb Pike. After passing Mr. Mitchell, Appellant entered the shoulder of the road to pass other cars that had stopped at the intersection

_____

[5] Victim also testified that he proceeded through the intersection on a green light. (*See* N.T. Trial at 54).

for a red light.  Without braking, Appellant then ploughed into Victim's vehicle, which had the right-of-way to proceed through the intersection.  Under these circumstances, Appellant demonstrated the criminal negligence necessary to support his conviction for AIDPI.  ***See Kutzel, supra***; 18 Pa.C.S.A. § 302(b)(4).  Likewise, the facts adduced at trial are proof of the recklessness necessary to support the convictions for aggravated assault by vehicle and reckless driving.  ***See Bullick, supra***; 18 Pa.C.S.A. § 302(b)(3).  Therefore, Appellant is not entitled to relief on his first claim.

Appellant's second and third issues are related, and we address them together.  Appellant notes that the Commonwealth first filed a criminal complaint on August 7, 2019, and the Rule 600 mechanical run date was August 6, 2020.  Appellant claims that the Commonwealth's subsequent inaction resulted in the dismissal of certain charges after the preliminary hearing, which delayed the prosecution.  Appellant insists that the Commonwealth created additional delay by failing to refile the criminal complaint in a timely manner.  Because the Commonwealth did not proceed with due diligence, Appellant contends that the adjusted Rule 600 run date should not be calculated by utilizing the filing date of the second criminal complaint.

Appellant also observes that additional delays plagued this case after the refiling of the complaint.  Appellant acknowledges that some delay was attributable to the declaration of a judicial emergency in the wake of COVID-

19, and he concedes that the period from March 12, 2020 through June 1, 2020 is excludable under Rule 600. Nevertheless, Appellant argues that "none of the ensuing 500 days between June 1, 2020 and the commencement of [Appellant's] trial can be attributed to the judicial emergency." (Appellant's Brief at 32-33). Rather, Appellant asserts that "the Commonwealth was never ready to proceed to trial throughout this period, since photographs remained outstanding in discovery[.]" (*Id.* at 33). Mindful of these delays, Appellant calculates an adjusted run date of October 25, 2020. Appellant concludes that trial commenced after this date, and the court should have granted his Rule 600 motion. Based upon our review of the record, additional action is required.

The following principles apply to our review of a speedy trial claim:

> Our standard of review in a Rule 600 issue is whether the trial court abused its discretion. Our scope of review when determining the propriety of the trial court is limited to the evidence in the record, the trial court's Rule 600 evidentiary hearing, **and the trial court's findings**. We must also view the facts in the light most favorable to the prevailing party[.]

*Commonwealth v. Risoldi*, 238 A.3d 434, 449 n.14 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 244 A.3d 1230 (2021) (emphasis added).

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty

- 14 -

of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters …, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Martz*, 232 A.3d 801, 809-10 (Pa.Super. 2020) (quoting

*Commonwealth v. Peterson*, 19 A.3d 1131, 1134-35 (Pa.Super. 2011)).

Rule 600 sets forth the speedy trial requirements and provides in pertinent part:

**Rule 600.  Prompt Trial**

**(A)   Commencement of Trial; Time for Trial**

*       *       *

(2)    Trial shall commence within the following time periods.

(a)    Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

*       *       *

**(C)   Computation of Time**

(1)    For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due

diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

\* \* \*

In cases in which the Commonwealth files a criminal complaint, withdraws that complaint, and files a second complaint, the Commonwealth will be afforded the benefit of the date of the filing of the second complaint for purposes of calculating the time for trial when the withdrawal and re-filing of charges are necessitated by factors beyond its control, the Commonwealth has exercised due diligence, and the refiling is not an attempt to circumvent the time limitation of Rule 600. **See Commonwealth v. Meadius**, 582 Pa. 174, 870 A.2d 802 (2005).

Pa.R.Crim.P. 600(A)(2)(a), (C)(1), and *Comment*.

Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence.

**Martz, supra** at 810-11 (quoting **Commonwealth v. Moore**, 214 A.3d 244, 248-49 (Pa.Super. 2019), *appeal denied*, \_\_\_ Pa. \_\_\_, 224 A.3d 360 (2020)) (internal citations and quotation marks omitted).

Recently, this Court addressed the concepts of "mechanical" and "adjusted" Rule 600 run dates, as well as the impact of local emergency orders on the calculation of these dates:

In a Rule 600 analysis, the "mechanical run date" is 365 days after the complaint was filed. The "adjusted run date" is then calculated by adding any time that is "excluded from the computation" under Rule 600(C)(1). If a defendant is not brought to trial by the adjusted run date, the case is dismissed. Two key cases guide our analysis here.

First, in **Harth**, our Supreme Court held that "before a trial court excludes time from its Rule 600 time computation on the basis of 'judicial delay,'" the Commonwealth must "demonstrate that it acted with due diligence." That is:

> [I]n ruling on a defendant's Rule 600 motion to dismiss, a trial court must first determine whether the Commonwealth has met its obligation to act with due diligence throughout the life of the case; if the Commonwealth meets its burden of proving due diligence, only then may the trial court rely upon its own congested calendar or other scheduling problems as justification for denying the defendant's motion.

Second, this Court considered the effect of local emergency orders in **Commonwealth v. Carl**, 276 A.3d 743 (Pa.Super. 2022). The issue in **Carl** was whether a period of a local judicial emergency would be excluded from the Rule 600 computation, *i.e.*, whether to add the days of the judicial emergency to the run date. The relevant order contained two provisions: "Suspend statewide rules pertaining to the rule-based right of criminal defendants to a prompt trial," and: "Any postponement caused by the judicial emergency shall be considered a court postponement and shall constitute excludable time for purposes of the application of Rule 600." This Court read the first provision as an absolute, unqualified suspension and the second provision as a supplemental rule for additional postponements. The second provision set a local policy to address ongoing delays. Because the first provision unambiguously suspended Rule 600, the days of that suspension should have been added to the run date regardless of the Commonwealth's diligence.

**Harth** and **Carl** frame the inquiry for the effect of emergency orders on Rule 600. If an order unambiguously suspends Rule 600 without qualification, then the period of

- 17 -

the suspension is added to the run date without considering the Commonwealth's diligence. Alternatively, if an order characterizes a delay as a court postponement, then that period is only excluded if the trial court determines after a hearing that the Commonwealth exercised due diligence through the life of the case.

**Commonwealth v. Lear**, 290 A.3d 709, 718-19 (Pa.Super. 2023) (internal citations and footnote omitted).

Utilizing this framework, **Lear** analyzed the specific orders related to the 2020 judicial emergency in Montgomery County.

On March 16, 2020, Montgomery County declared a judicial emergency and ordered that the operation of Rule 600 would be suspended "during the period of the local judicial emergency." On March 31, 2020, Montgomery County extended the judicial emergency to April 30, 2020, again ordering Rule 600 to be suspended. On April 14, 2020, Montgomery County extended the judicial emergency to May 31, 2020.

On May 5, 2020, Montgomery County entered an order rescinding its previous orders effective May 31, 2020. It listed virus-related protocols that would be effective June 1, 2020.

On May 28, 2020, Montgomery County declared that the local judicial emergency would be extended "until further Order of Court." It ordered that its declaration included the provisions of the order from May 5, 2020.

On June 3, 2020, Montgomery County ordered "that any postponement of criminal case scheduling caused by the declaration of this judicial emergency, from March 12, 2020 through the expiration of the judicial emergency, shall be considered a court postponement and shall constitute excludable time for purposes of the application of Rule of Criminal Procedure 600."

\* \* \*

> [T]he plain language of the orders reflects that Montgomery County did not continue its unqualified suspension of Rule 600 beyond May 31, 2020. On May 5, 2020, Montgomery County ordered that its previous orders would be rescinded effective May 31, 2020. There were no later orders suspending Rule 600. Instead, Montgomery County opted to order on June 3, 2020, that any emergency-related delay "shall be considered a court postponement and shall constitute excludable time" under Rule 600(C).
>
> As in *Carl*, the plain meaning of the "court postponement" provision was to establish a framework for applying Rule 600 to any postponement caused by the local judicial emergency. Unlike in *Carl*, however, the Montgomery County orders did not separately provide that Rule 600 would be suspended after May 31, 2020.

*Id.* at 719-20 (internal citations omitted).

Instantly, the trial court denied Appellant's Rule 600 motion on September 22, 2021. The order stated that the court had considered the arguments raised at the Rule 600 hearing, Appellant's dismissal motion, the Commonwealth's response, and the memoranda of law submitted by the parties.[6] The order, however, contained no additional findings regarding the Commonwealth's due diligence or any periods of excludable delay. Likewise, the current Rule 1925(a) opinion offers no further insight into the reasoning behind the denial of Appellant's Rule 600 motion. On this record, we do not have an adequate basis for evaluating whether the court erred in issuing its ruling. *See Risoldi, supra*. Thus, remand is required.

_____

[6] The certified record does not include the memoranda of law, and there are no docket entries memorializing the filing of the memoranda.

We also note that the parties have yet to evaluate the *Lear* decision. This is significant because the parties grappled with issues addressed in *Lear*. For example, the court ordered the parties to file their memoranda of law immediately after the Rule 600 hearing. In this order, the court directed the parties to address "whether **Commonwealth v. Harth** is applicable to periods of judicial delay occasioned by the emergency orders issued as a result of the COVID-19 pandemic." (Order, filed 9/13/21, at 1). Now that there is guidance from this Court, questions concerning the applicability of **Harth** need not hover over the resolution of this matter.

Because we cannot say whether consideration of *Lear* might impact the court's prior determination, the most prudent course of action is to remand the matter for a supplemental Rule 600 hearing. At that time, the parties can evaluate the impact of *Lear*. After additional argument, the court must identify each period of delay and determine whether it is excludable under Rule 600, as well as whether the Commonwealth acted with due diligence. **See Commonwealth v. Thompson**, 93 A.3d 478 (Pa.Super. 2014) (remanding for trial court to determine whether certain period of delay was attributable to Commonwealth for Rule 600 purposes). The court should make specific due diligence findings for the periods of delay that came before and after the refiling of the charges.

Case remanded. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2023